Donna J. HELM, Appellant–Respondent,

v.

Steven D. HELM, Appellee–Petitioner.

No. 01A04–0703–CV–175.

Court of Appeals of Indiana.

Sept. 5, 2007.

Julie–Marie Brown, Decatur, IN, Attorney for Appellant.

Joseph M. Johnson, II, Decatur, IN, Attorney for Appellee.

## OPINION

BRADFORD, Judge.

Respondent–Appellant Donna Helm appeals from the trial court's division of the marital estate following the dissolution of her marriage to Petitioner–Appellee Steven Helm. We reorder and restate Donna's claims as whether the trial court erred in excluding unpaid future lottery payments from the marital estate and whether such exclusion, if erroneous, constituted harmless error. We affirm.

## FACTS

In December of 1987, Steven Helm won an Ohio lottery prize of $3,000,000, to be paid in twenty annual installments of $150,000. After taxes, Steven netted approximately $117,000 from each annual payment. Steven had received two lottery payments by the time he married Donna Helm on May 15, 1989. On October 21, 2005, Steven filed a petition for dissolution of marriage.

On January 10, 2007, by which time the last two annual lottery payments had been received, the trial court entered its dissolution decree. The trial court's order provided, in relevant part:

> 4. That the marital estate consists of the following:
>
> 2003 Pontiac $ 14,000.00

| | | |
|---|---|---|
| Marital Residence (including furnishings) | $ | 225,000.00 |
| Doll Collection | $ | 1,000.00 |
| Donna's IRA Accounts | $ | 46,290.32 |
| Christianson Art Prints | $ | 15,000.00 |
| Stock, et al. | $ | 748,855.00 |
| 1997 Chevrolet Truck | $ | 7,000.00 |
| Lake home ($50,000.00 due to Steven's mother) | $ | 325,000.00 |
| Kaleidoscope collection | $ | 1,000.00 |
| Steve's IRA and PERF | $ | 87,330.00 |
| Florida Time Share | $ | 10,000.00 |
| | | $1,480[,]445.32 |
| Last lottery check due (12-06) net: | $ | 117,000.00 |
| Total marital estate: | $ | 1,597,445.32 |

. . .

It is also noted that the two (2) lottery checks received subsequent to the filing of the Petition for Dissolution of Marriage have been included in the marital estate, based on the actual amount received of $117,000.00.

. . . .

In the case at hand, Petitioner, Steven D. Helm, won the lottery before the parties married. While he commingled the proceeds every year, the lottery was vested in him alone. The parties invested a substantial amount of the lottery proceeds after taxes and still have that money. The parties agreed upon equal division of the commingled, invested proceeds. As to the lottery proceeds to be received after the filing of the Petition for Dissolution, that would seem to be traceable to his premarital efforts, albeit fortuitous efforts. Such circumstance seems no different from any other traceable asset acquired pre-marriage. In view of these circumstances, the Court believes that the statutory presumption of an equal division has been clearly rebutted and the Court finds husband's proposed division of the marital estate just and reasonable.

5. The marital estate should be divided as follows:

### WIFE

| | |
|---|---|
| 2003 Pontiac | $ 14,000.00 |
| Marital residence and contents | $225,000.00 |
| Doll collection | $ 1,000.00 |
| Wife's IRA accounts | $ 46,290.32 |
| Christianson art prints | $ 15,000.00 |
| Stock et al. ($748,855.00 − $117,000.00 = $631,855 ÷ | $315,927.50) |
| | $315,927.50 |
| Total to wife: | $617,217.82 |

### HUSBAND

| | |
|---|---|
| 1997 Chevrolet Truck | $ 7,000.00 |
| Lake home (subject to Life Estate and $50,000.00 owed to Steve's mother) | $325,000.00 |
| Kaleidoscope collection | $ 1,000.00 |
| Steve's IRA and PERF | $ 87,300.00 |
| Florida Time Share | $ 10,000.00 |
| Stock et al. ($315,927.50 + $117,000.00) | $432,927.50 |
| Lottery check due (12/06) | $117,000.00 |
| Total to husband: | $980,027.75[1] |

On February 9, 2007, Donna filed a Motion to Reconsider and Motion to Correct Errors, which the trial court denied on February 20, 2007. The trial court's order provides, in relevant part:

Lotteries are a recent phenomenon nationally, such that no cases on p[o]int were found. In general, lottery winnings during the marriage should be shared equally. Lottery winnings following separation (post filing) go to the winning party absent dire circumstances of the other spouse and post dissolution winnings affect only child support. While lottery winnings are a game of chance, business opportunity and inheritance are equally a matter of good fortune. It does not seem appropriate to create a special category and treat it differently.

The general law seems to be that absent special consideration such as dire circumstances the pre-marital property

---

1. Based on the enumerated values of the assets listed in this section, and consistent with the figures listed in the rest of the order, the actual "Total to husband" is $980,227.75, or $200 greater than the sum listed in the trial court's order.

payable to the Petitioner post-filing for dissolution would pass to the Petitioner. The Court decided that the lottery proceeds to be received in the name of Steven D. Helm which he had won prior to the marriage and receivable post separation would go to Steven D. Helm. No dire circumstances were presented.

Donna now appeals the trial court's distribution of the marital estate.

## DISCUSSION AND DECISION

### I. Standard of Review

 Where, as here, the trial court *sua sponte* enters specific findings of fact and conclusions, we review its findings and conclusions to determine whether the evidence supports the findings, and whether the findings support the judgment. *Fowler v. Perry*, 830 N.E.2d 97, 102 (Ind.Ct. App.2005). We will set aside the trial court's findings and conclusions only if they are clearly erroneous. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake was made. *Id.* We neither reweigh the evidence nor assess the witnesses' credibility, and consider only the evidence most favorable to the judgment. *Id.* Further, "findings made *sua sponte* control only ... the issues they cover and a general judgment will control as to the issues upon which there are no findings. A general judgment entered with findings will be affirmed if it can be sustained on

any legal theory supported by the evidence." *Id.* Donna argues that the trial court erred in excluding the 2005 and 2006 lottery payments[2] (*i.e.*, the payments received after Steven filed his dissolution petition) from the marital estate and in departing from the statutory presumption of an equal split of the marital estate.

### II. The Lottery Payments

 Indiana Code section 31–15–7–4 provides that the marital estate that the trial court must divide in a dissolution proceeding is comprised of the property owned or acquired by either party before the "final separation of the parties[,]" which is defined as "the date of filing of the petition for dissolution of marriage[.]" Ind.Code § 31–9–2–46. In other words, the marital estate is set at the time of the filing of the dissolution petition, which, in this case, was before the last two lottery payments were received. In this context, however, "property" is not limited just to property in-hand when the dissolution petition is filed.

 While "[i]t has long been the law in this State that future earnings are not considered part of the marital estate for purposes of property division[,]" *Beckley v. Beckley*, 822 N.E.2d 158, 160 (Ind.2005), a right to receive future payments can be considered property. Some of these instances are governed by statute. Indiana

---

**2.** Although the trial court originally included the final two lottery payments in the marital estate, its order denying Donna's Motion to Reconsider indicates that it had very possibly reconsidered that position and no longer considered this to be the case. Specifically, the trial court's statement that "[l]ottery winnings following separation (post filing) go to the winning party absent dire circumstances of the other spouse" seems to indicate that it considered post-separation lottery payments to be outside the marital estate, regardless of when the spouse gained the right to receive

them. To the extent that the trial court may have changed its position on the issue, for purposes of guidance we address the question as though it had.

Also, although Donna asks for an equal division of the marital estate in her prayer for relief, the parties actually disagree only with regard to the 2005 and 2006 lottery payments and do not dispute the distribution of any of the rest of the marital estate. All in all, the undisputed portions of the distribution total $746,227.50 to Steven and $617,217.82 to Donna, or an approximate 55/45 split.

Code section 31–9–2–98 provides, in relevant part, that

> '[p]roperty' ... means all the assets of either party or both parties, including:
> ...
>> (2) the right to receive pension or retirement benefits that are not forfeited upon termination of employment or that are vested (as defined in Section 411 of the Internal Revenue Code) but that are payable after the dissolution of marriage; and
>> (3) the right to receive disposable retired or retainer pay (as defined in 10 U.S.C. 1408(a)) acquired during the marriage that is or may be payable after the dissolution of marriage.

Additionally, Indiana Courts have, on occasion, determined that certain rights to future payment constitute "property" to be included in a marital estate, even if not covered by the above statute. *See Leisure v. Leisure*, 589 N.E.2d 1163, 1170 (Ind.Ct. App.1992), *reh'g denied* (concluding that the predecessor to Indiana Code section 31–9–2–98 did not "purport to exclude property" and that payments not covered by 10 U.S.C. 1408 may nevertheless be considered property). For example, in *Henry v. Henry*, 758 N.E.2d 991, 994 (Ind. Ct.App.2001), we concluded that "matured" stock options that could have been converted into cash prior to the final dissolution hearing were to be included in the marital estate. Also, in *Sedwick v. Sedwick*, 446 N.E.2d 8, 10 (Ind.Ct.App.1983), we concluded that future payments from a structured settlement annuity accepted in payment for services rendered constituted property within the marital estate.

■ The common denominator in all of the above examples is whether the interest in the future payment is "vested." As we have noted, "Indiana's 'one pot' theory prohibits the exclusion of any asset in which a party has a *vested interest* from the scope of the trial court's power to divide and award." *Hann v. Hann*, 655 N.E.2d 566, 569 (Ind.Ct.App.1995), *trans. denied* (emphasis supplied). "The word 'vest' generally means either vesting in possession or vesting in interest." *In re Marriage of Preston*, 704 N.E.2d 1093, 1097 (Ind.Ct.App.1999) (citing *Brown v. American Fletcher Nat'l Bank*, 519 N.E.2d 166, 168 (Ind.Ct.App.1988), *reh'g denied*). "Vesting in possession connotes an immediate existing right of present enjoyment, while vesting in interest implies a presently fixed right to future enjoyment." *Preston*, 704 N.E.2d at 1097.

■ We have little trouble concluding that the lottery payments at issue in this case qualified as a "presently fixed right to future enjoyment[,]" very closely analogous to the annuity at issue in *Sedwick*. There is no indication in the record that Steven ever had to do anything, beyond purchasing the original lottery ticket, to receive and enjoy his annual lottery payments. In short, at the time of the filing of the dissolution petition, Steven's interest in the lottery payments was fully vested in that he had the non-contingent right to receive two more of them, a right created when he won the lottery in 1987. The trial court therefore erred in concluding that the last two lottery payments were to be excluded from the marital estate.[3]

---

**3.** Our conclusion is consistent with those of other state courts that have considered similar questions. *See In re Marriage of Morris*, 266 Ill.App.3d 277, 203 Ill.Dec. 685, 640 N.E.2d 344, 347 (Ill.App.Ct.1994) (concluding that lottery winnings were marital property even though payments were made in one person's name and most payments would not be received until after divorce was final); *In re Marriage of Mahaffey*, 206 Ill.App.3d 859, 151 Ill.Dec. 638, 564 N.E.2d 1300, 1307 (Ill.App. Ct.1990) (concluding that lottery jackpot, in-

### III. Harmless Error

██ Even in cases where trial courts have erroneously excluded assets from the marital estate, we have affirmed the property division when the error was harmless. *See, e.g., Capehart v. Capehart,* 705 N.E.2d 533, 537 (Ind.Ct.App.1999), *reh'g denied* (concluding that erroneous exclusion of education debt from marital estate and subsequent assignment of debt solely to husband was harmless when debt was incurred prior to marriage by husband and wife contributed nothing to its acquisition). When the trial court's reasons for awarding certain assets to one party support an unequal division of property, we will affirm despite an erroneous exclusion of property. *Lulay v. Lulay,* 591 N.E.2d 154, 156 (Ind.Ct.App.1992) (concluding that trial court's failure to include husband's pensions in the marital estate was harmless where trial court awarded them to husband because they had been acquired before marriage and wife had contributed nothing to their acquisition).

Indiana Code section 31–15–7–5 provides:

The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse:

(A) before the marriage; or

(B) through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to:

(A) a final division of property; and

(B) a final determination of the property rights of the parties.

 "Subject to the statutory presumption that an equal distribution of marital property is just and reasonable, the disposition of marital assets is committed to the sound discretion of the trial court." *Augspurger v. Hudson,* 802 N.E.2d 503, 512 (Ind.Ct.App.2004).

An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances, or the reasonable, probable, and actual deductions to be drawn therefrom. An abuse of discretion also occurs when the trial court misinterprets the law or disregards evidence of factors listed in the controlling statute. The presumption that a dissolution court correctly followed the law and made all the proper considerations in crafting its property distribution is one of the strongest presumptions applicable to our consideration on appeal. Thus, we will reverse a property distribution only if there is no rational basis for the award

cluding right to future payments, was marital property); *Ullah v. Ullah,* 161 A.D.2d 699,

555 N.Y.S.2d 834 (N.Y.App.Div.1990) (same).

and, although the circumstances may have justified a different property distribution, we may not substitute our judgment for that of the dissolution court. *Id.* (citations, quotation marks, and brackets omitted).

■ A trial court, however, generally may not rely on just one of the factors listed in Indiana Code section 31–15–7–5 in determining that an unequal division would be warranted, but must consider the factors "in conjunction with relevant evidence regarding other statutorily prescribed factors, and with any evidence demonstrating additional reasons that an unequal distribution would be just and reasonable." *Eye v. Eye,* 849 N.E.2d 698, 702 (Ind.Ct. App.2006). This is not to say, however, that a trial court is required to explicitly address all statutory factors in all cases. It follows that a trial court would not be required, for example, to consider findings regarding statutory factors not implicated by the evidence.

■ Moreover, "[t]he trial court's exclusion of [statutory] factors from its written findings does not mean that it did not consider them." *Shumaker v. Shumaker,* 559 N.E.2d 315, 318 (Ind.Ct.App. 1990). "We presume the trial court considered all the evidence of record and properly applied the statutory factors." *Id.* "The statute does not require the trial court to list those factors that do not justify the unequal division of property." *Id.* "The trial court need only 'state its reasons for deviating from the presumption of an equal division.'" *Id.* (quoting *In re Marriage of Davidson,* 540 N.E.2d 641, 646 (Ind.Ct.App.1989)), *reh'g denied.*

■ Here, despite the trial court's exclusion of the lottery payments from the marital estate, we conclude that any such error was harmless because the trial court otherwise satisfied the requirements of Indiana Code section 31–15–7–5 and its reasons for awarding a greater share to Steven fully justify the unequal division. In justifying the unequal distribution, the trial court had the following to say:

> As to the lottery proceeds to be received after the filing of the Petition for Dissolution, that would seem to be traceable to his premarital efforts, albeit fortuitous efforts. Such circumstance seems no different from any other traceable asset acquired pre-marriage. In view of these circumstances, the Court believes that the statutory presumption of an equal division has been clearly rebutted[.]

(Appellant's App. 7).

■ Our review of the record leads us to the conclusion that, although the trial court specifically addressed only the first two of the statutory factors, *i.e.,* the contribution of each spouse to the estate and the extent to which property was acquired before marriage or through gift or inheritance, none of the other factors clearly supported an unequal division. As such, the trial court was not required to explicitly address them in its order. *See Shumaker,* 559 N.E.2d at 318.

There is no evidence to suggest that the third factor, the economic circumstances of the parties at the time the disposition is to become effective, would require an unequal division. Steven and Donna both received a residence, a motor vehicle, the retirement accounts that are in their names, and several hundred thousand dollars worth of additional assets besides. Steven and Donna apparently have no dependent children, and there is no indication that either, due to illness, etc., has a greater need for money than the other. We cannot say that the trial court abused its discretion in determining that this factor did not warrant an unequal division.

As for the fourth factor, the conduct of the parties during the marriage related to disposition or dissipation of the property, there is, quite simply, no evidence anywhere in the record one way or the other. As such, the trial court was not required to consider this particular factor.

Finally, regarding the fifth factor, the earnings or earning ability of the parties, again there is scant evidence. The trial court heard no evidence regarding the present earnings of either party, only that Donna has "an office in Berne" where she works, presumably as mental health counselor, and that Steven currently works part-time as a police dispatcher. As for earning potential, again there was no specific evidence presented. We simply cannot assume, for example, that Donna's earning potential is significantly greater than Steven's (by virtue of her Master's degree) in the absence of evidence. Donna has failed to establish that the trial court abused its discretion in failing to make specific findings regarding this factor, as there is no indication that it would support an unequal division. In sum, we conclude that the trial court satisfied the requirements of Indiana Code section 31–15–7–5.

Moreover, for purposes of our harmless error analysis, we conclude that the trial court's reasons for awarding a greater share to Steven fully justify the unequal division. Just as in *Capehart* and *Lulay*, Steven gained the right to receive the lottery payments before marriage, without any contribution from Donna, and that right would have remained his alone had he remained single. Although undoubtedly the product of exceptionally good fortune and likely the result of relatively little effort or expense, the fact is that Steven won the lottery, and there is no evidence that Donna had anything to do with it.

It should also be noted that, unlike in *Capehart* and *Lulay*, where the entire asset at issue was assigned to one party, here only two of twenty lottery payments, or 10% of the total lottery jackpot, are subject to the unequal division. In other words, even under the unequal division here, Donna will effectively receive the benefit of an equal division of 90% of the total lottery jackpot. As the trial court noted in its original order, "[i]t is obvious that substantially all of the marital estate is directly attributable to the lottery winnings which husband acquired before the marriage and brought into the marriage." (Appellant's App. 6).

Finally, it should be borne in mind that when the trial court ordered the unequal division, it did so based on its original inclusion of the payments in the marital estate. Only in its order denying Donna's Motion to Reconsider did the trial court revisit the question and apparently determine that the lottery payments were not, in fact, part of the marital estate. Even so, the trial court did not then alter its original distribution. Believing, as we do, that the trial court would have been justified in unequally dividing the marital estate had it correctly included the lottery payments, it is difficult to see how Donna could have been hurt by their exclusion when the original distribution took them into account and did not change when they were later excluded.

The judgment of the trial court is affirmed.

NAJAM, J., and MATHIAS, J., concur.