**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 30 2012, 9:14 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ROBERT J. HARDY**
Hardy Law Office
Auburn, Indiana

ATTORNEY FOR APPELLEE:

**TRINA GLUSENKAMP GOULD**
Helmke Beams LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KATIE C. GRABER, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 02A04-1112-DR-696 |
| | ) | |
| DALE GRABER, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE ALLEN CIRCUIT COURT
The Honorable Thomas J. Felts, Judge
Cause No. 02C01-1004-DR-298

**July 30, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellant-respondent Katie C. Graber (Wife) appeals the trial court's decree dissolving her marriage to appellee-petitioner Dale Graber (Husband). Specifically, Wife argues that the trial court erred in its division of the marital assets and by denying Wife's request for permanent maintenance. Finding no error, we affirm the decision of the trial court.

FACTS

Husband and Wife were married on November 20, 1991, when Husband was almost fifty-one years old and Wife was forty-six years old. Husband is retired from the concrete business and receives $1,914 per month in social security benefits. Wife is retired and receives $652 per month from social security after a Medicare payment. Husband and Wife have been previously married; Husband has three adult children from his previous marriage, and Wife has two adult children from her previous marriage.

At the time of the parties' marriage, Husband owned a minority interest in Graber and Graber Contractors, Inc. and was vested in the company's pension plan. In 1994, Husband's interest in Graber and Graber Contractor's, Inc. was purchased by Don Graber, Husband's brother and the majority shareholder, for $293,000 along with a truck and some personal property. Following the buyout, Husband formed Dale Graber Concrete Contractor, Inc. Initially, the shares of the corporation were held by Husband and Wife as joint tenants with rights of survivorship. In 2002, Husband and Wife conveyed one-third of those shares to Robbie Setser, who is Wife's son and was involved

in the business. Husband continued in the business until 2005 and since that time, he has periodically assisted Robbie with concrete jobs.

Husband also had a retirement account, most of which had been acquired before the parties married. The retirement plan remained exclusively in Husband's name. When the petition for dissolution of marriage was filed on April 19, 2010, the retirement account consisted of a Hartford IRA valued at $305,000 and an Investment Financial Corporation account valued at $52,000. At the time of the final hearing, the IRA had a value of $281,800.

At the time of the marriage, Wife owned a house that was secured by a mortgage. Husband paid off this mortgage in 1993. This house was located in Dupont and was sold on September 1, 1998. In 1993, Husband and Wife purchased sixteen acres in Leo and built a home, which was the marital residence. Initially, Husband and Wife secured a $75,000 mortgage with Grabill Bank against the real estate. The real estate was titled with Husband and Wife as co-trustees. Through the years, Husband and Wife have used this property to secure mortgages or home equity loans with Grabill Bank. The real estate is currently secured by a mortgage in the principal sum of $100,000. Husband made interest-only payments on this mortgage. Husband and Wife did not agree with the appraised value of this property.

At the time of the marriage, Wife owned a restaurant in Fremont, which was subsequently sold for $100,000. Part of the proceeds was used to pay off the loan and

3

Wife received the net proceeds. Also at the time of the marriage, Wife owned a lot at Lake Minfenokee near Fremont, which was subsequently sold.

In 2006, Husband and Wife purchased real estate and built a home in Palmetto, Florida. This real estate is free and clear of any mortgages. The appraised value of the real estate is $405,000 per the Hunt Property appraisal.

During the course of the marriage, Husband and Wife owned a cottage at Sylvan Lake, which was sold in October 2005. From the proceeds of that sale, the parties purchased a cottage at Lake Hamilton. At the time of the purchase, there was a little house on the property, which was subsequently demolished. The parties then began construction on a new cottage on April 15, 2006, which was completed in August 2006. This property has been listed for sale since its completion. It was originally listed for $619,000; however, its current listing is for $419,900. Husband and Wife have received only one offer, which was for $330,000. The appraised value is $420,000.

Since the filing of the petition, Husband has paid the following: Schlatter Road (marital residence) real estate taxes of $3,176.92; Hamilton Lake real estate taxes of $3,823.63; and the Florida real estate taxes of $4,900, all payable for 2010. In addition, Husband paid the insurance on each of these properties: Schlatter Road was $845 annually, Hamilton Lake was $1,036 annually, and the Florida real estate was $1,620 annually. Additionally, Husband paid all of the utilities for the Hamilton Lake and Florida properties since the filing and on the property located on Schlatter Road until the

4

approval of the Provisional Orders in November 2010. The 2011 real estate taxes had yet to be paid at the time the decree was issued.

Wife is disabled. Specifically, she is legally blind and has severe diabetes that is uncontrolled. Additionally, Wife had a stroke in 2000 and has been deteriorating since that time. Wife requires the use of a wheelchair because she can walk only about ten feet with a walker. Wife is unable to work as a result of her disabilities. Wife is not fully able to care for herself and requires assistance, which primarily comes from her neighbor, Judy Caswell. Caswell cooks and cleans for Wife and drives her to run errands and to medical appointments. Wife can print but is unable to see what she writes. On one occasion, Wife fell from her wheelchair in her garage and was unable to get back into her chair. Caswell found Wife almost an hour later.

Wife's home is poorly suited for her disabilities. She is unable to do laundry because the washer and dryer are in the basement with no ramp access. The doorway to her bathroom is too small to allow the wheelchair through the door, and Wife is required to use a grab bar for access. Wife has fallen several times using the bathroom.

On December 13, 2010, the parties filed a Joint Stipulation Regarding Provisional Orders. The trial commenced and was completed on July 19, 2011, and the case was taken under advisement by the trial court. The trial court issued its Decree of Dissolution of Marriage on August 8, 2011.

In the trial court's Decree of Dissolution of Marriage, it set forth its division of assets in Exhibit A, which shows that Wife received assets totaling $476,565 and

5

Husband received assets totaling $809,859. Wife was also awarded the first $62,761.70 from the proceeds of the sale of the home on Hamilton Lake and 55% of the remaining proceeds following the sale of the home at auction.

Wife filed a Motion to Correct Errors on September 8, 2011. The motion addressed the failure to award maintenance and that the property division was inequitable. Wife specifically argued that she should receive $631 per month as permanent maintenance because of her disability and the disparity of the income between the two parties. A hearing was held on the motion on November 4, 2011.

On November 7, 2011, the trial court issued an order amending its August 8 Decree of Dissolution. More particularly, as it pertained to the Hamilton Lake property, the trial court ordered that:

> Husband shall pay Wife the sum of $600.00 per month, beginning November 15, 2011 and on the 15th day of each month thereafter, until the Hamilton Lake property is sold as described herein. Husband shall be reimbursed for these payments at the time of sale from the Wife's proceeds from the sale as described above.

Appellant's App. p. 15. The Order also stated that "the Court specifically denies [Wife's] allegations of error regarding the payment of spousal maintenance and attorney fees as the Court specifically finds that [Wife] has been awarded sufficient assets to provide for these payments in the division of the marital estate." Id. Wife now appeals.

DISCUSSION AND DECISION

6

## I. Standard of Review

In this case, the trial court entered findings of fact and conclusions sua sponte. Sua sponte findings control only the issues they cover, and the reviewing court will apply a general judgment standard to those issues on which the trial court has made no findings, affirming on any theory the evidence in the record supports. Helm v. Helm, 873 N.E.2d 83, 87 (Ind. Ct. App. 2007). On appeal, we will review the trial court's findings and conclusions to determine whether the evidence supports the findings and whether the findings support the judgment. Id. The reviewing court will set aside the trial court's findings and conclusions only if they are clearly erroneous. Id. Finally, we will consider only the evidence most favorable to the judgment and will not reweigh the evidence. Id.

## II. Division of Assets

Wife makes a two-pronged argument that the trial court's division of the marital assets was inequitable: 1) The effect of the trial court's order was to award her only 40% of the marital estate while awarding Husband 60%; 2) She presented sufficient evidence to rebut the presumption of an equal division of the marital estate in her favor.

The division of marital property lies within the trial court's sound discretion, and we will reverse only for an abuse of that discretion. DeSalle v. Gentry, 818 N.E.2d 40, 44 (Ind. Ct. App. 2004). A party challenging the trial court's division of marital property must overcome a strong presumption that the trial court "considered and complied with the applicable statute, and that presumption is one of the strongest presumptions applicable to our consideration on appeal." Id.

7

Although the facts and reasonable inferences might allow for a different conclusion, we will not substitute our judgment for that of the trial court. Hendricks v. Hendricks, 784 N.E.2d 1024, 1027 (Ind. Ct. App. 2003). We consider the trial court's disposition of marital property "as a whole, not item by item." Krasowski v. Krasowski, 691 N.E.2d 469, 473 (Ind. Ct. App. 1998).

Indiana Code section 31-15-7-4 provides, in relevant part:

(a) In an action for dissolution of marriage . . . the court shall divide the property of the parties, whether:

    (1) owned by either spouse before the marriage;

    (2) acquired by either spouse in his or her own right:

        (A)  after the marriage; and

        (B)  before final separation of the parties; or

    (3) acquired by their joint efforts.

Indiana Code section 31-15-7-5 provides, in relevant part:

The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:

    (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

    (2) The extent to which the property was acquired by each spouse:

        (A) before the marriage; or

8

(B) through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

Although Wife argues that the trial court erred by awarding her only 40% of the marital assets while awarding Husband 60% of the marital assets, two of the assets awarded to Husband were owned by him prior to the marriage and were never commingled during the course of the marriage. These assets were the Investment Financial Corporation account valued at $52,885, and the Hartford IRA, valued at $305,830. When these two assets are subtracted from the marital pot, as the trial court is permitted to do under Indiana Code section 31-15-7-5(2), Wife was awarded approximately 55% of the remaining marital assets and Husband was awarded approximately 45% of the remaining marital assets. Under these circumstances, we cannot say that the trial court did not divide the assets in a just, reasonable, and equitable manner, and this argument fails.

### III. Maintenance

Wife contends that the trial court erred by not awarding her permanent maintenance. The decision to award maintenance is a matter within the trial court's discretion. Fuehrer v. Fuehrer, 651 N.E.2d 1171, 1174 (Ind. Ct. App. 1995). This Court will reverse only when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. Id. "The presumption that the trial court correctly

applied the law in making an award of spousal maintenance is one of the strongest presumptions applicable to the consideration of a case on appeal." Id. Moreover, a maintenance award is not mandatory even if a trial court finds that a spouse's incapacity materially affects her ability to be self-supporting. In re Marriage of Richmond, 605 N.E.2d 226, 228 (Ind. Ct. App. 1992).

Indiana Code section 31-15-7-2(1) provides:

> If the court finds a spouse to be physically or mentally incapacitated to the extent that the ability of the incapacitated spouse to support himself or herself is materially affected, the court may find that maintenance for the spouse is necessary during the period of incapacity, subject to further order of the court.

Wife argues that the trial court's decree of dissolution and order on its motion to correct errors do not discuss maintenance; however, in the order on the motion to correct error, the trial court stated, "the Court specifically denies [Wife's] allegations of error regarding the payment of spousal maintenance and attorney fees as the Court specifically finds that [Wife] has been awarded sufficient assets to provide for these payments in the division of the marital estate." Appellant's App. p. 15.

More particularly, Wife was awarded the marital residence appraised at $460,200 free and clear, along with a bank account and other personal property. Appellant's App. p. 14. In addition, the trial court ordered that the Hamilton Lake property be auctioned and after the home equity line of credit was paid in full and Husband was reimbursed for interest payments that he made from the date of the dissolution decree until the sale, the Wife was to be awarded $62,761.70 and 55% of the remaining proceeds.

10

Under these facts and circumstances, the trial court could have reasonably concluded that Wife possessed sufficient property to meet her needs. Indeed, Wife is free to sell the marital residence and purchase a smaller home that is better suited for her needs and physical limitations. Wife could then invest the balance to provide her with additional income. In any event, the trial court did not err by refusing to award permanent maintenance, and we affirm the decision of the trial court.

The judgment of the trial court is affirmed.

KIRSCH, J., and BROWN, J., concur.