## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 23 2019, 9:47 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Katherine A. Harmon
Jared S. Sunday
Mallor Grodner, LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Stephenie K. Gookins
Cate Terry & Gookins, LLC
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Holly Diethrich,

*Appellant-Respondent,*

v.

Kyle Diethrich,

*Appellee-Petitioner.*

October 23, 2019

Court of Appeals Case No.
19A-DC-928

Appeal from the Vigo Superior Court

The Honorable Charles D. Bridges, Special Judge

Trial Court Cause No.
84D02-1807-DC-5501

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Respondent, Holly Diethrich (Mother), appeals the trial court's Final Order on Dissolution (Final Order) in favor of Appellee-Petitioner, Kyle Diethrich (Father).

We affirm.

# ISSUES

Mother presents us with two issues which we restate as:

    (1)  Whether the trial court's grant to Father of parenting time in excess of that provided for in the Indiana Parenting Time Guidelines (Guidelines) was clearly erroneous; and

    (2)  Whether the trial court abused its discretion when it unequally divided the marital estate.

# FACTS AND PROCEDURAL HISTORY

Father manages a skilled-care nursing facility. Father is also a veteran who serves as a combat medic in the Army Reserve. Mother is the marketing team leader for a dentistry and orthodontics company. In 2011, before the parties began dating, Father purchased a home located on Anthony Lane in Terre Haute (premarital home). Mother did not contribute monetarily to the purchase of the premarital home. Mother began living in the home with Father after he purchased it. On a date which is unclear from the record, Father sold the premarital home and used $12,882.82 of the proceeds to renovate a home

located on Oakwood Place in Terre Haute (marital residence) that the couple moved into together.

[5] The parties married on September 5, 2015. On February 15, 2018, one child was born of the marriage, C.D., who has congenital lobar emphysema. The management of this condition requires that C.D. receive daily nebulizer treatments and that C.D.'s liquid foods be thickened to deter aspiration.

[6] Father filed for dissolution on July 20, 2018. During the pendency of the dissolution proceedings, Mother moved the trial court to have Father drug tested. The trial court denied that motion. On the same day that Mother filed her motion, Father underwent a voluntary hair follicle drug screen which showed that he was free from illicit substances.

[7] On February 19, 2019, the trial court held the final hearing. By that time, Father had relocated to Mattoon, Illinois, which was approximately a one-hour drive from Mother's home and C.D.'s day care in Terre Haute. Father testified that he is drug tested regularly by the Army and by his employer. Father expressed concern that he would eventually lose his employment if he were required to continue to leave work early in order to exercise his parenting time scheduled as part of the Preliminary Orders, which had not provided for any overnight parenting time. Father confirmed at the hearing that he had fed, bathed, and cared for C.D. overnight prior to the separation and that he was capable of administering the nebulizer treatments and thickened foods that she

required. Father requested that he be reimbursed the $12,882.82 from the premarital home proceeds that he had invested in the marital home renovation.

[8] Mother testified that she wanted Father to exercise parenting time in line with the Guidelines, except that she felt that overnight parenting time should be phased in. Mother requested an equal division of the marital estate. As to the proceeds of the sale of the marital home, Mother did not feel that Father was entitled to an unequal share in light of the $12,882.82 he had invested because "we lived there together." (Transcript p. 104).

[9] On April 8, 2019, the trial court issued its Final Order in which it ordered that Father would exercise parenting time overnights on Wednesday and Thursday each week and that every other week he would additionally exercise parenting time overnights on Saturday and Sunday. The trial court entered the following findings and conclusion relevant to parenting time:

> a. [] This schedule minimizes any driving by Mother.
>
> * * * *
>
> d. The [c]ourt notes that this Parenting Time Schedule does vary from the [Guidelines]. However, this has been done as an effort to grant as much parenting time to Father as possible. Father has demonstrated good character and the medical knowledge necessary to handle any of [C.D.'s] medical needs.

(Appellant's App. 13-14). The trial court divided the proceeds from the sale of the marital residence as follows:

14. Sale of [the marital residence].  Real Property.  The parties shall divide the sales proceeds as follows:

    a.  Total amount of proceeds: $20,370.72

    b.  Total amount from sale of [Father's] premarital home: $12,882.82

    c.  Total amount paid in repairs/fees by [Father] out of pocket: $1972.60[1]

    d.  $20,370.72 – 12,882.82 = $7487.90

    e.  $7487.90/2 = $3474.00

    f.  [Father] receives after out of pocket reimbursement: $17,613.07

    g.  [Mother] receives:  $2757.65

(Appellant's App. pp.15-16).

[10]    Mother now appeals.  Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I.  *Standard of Review*

[11]    Mother challenges the portions of the Final Order granting parenting time to Father and dividing the marital estate.  It appears that neither party requested that the trial court enter special findings of fact and conclusions of law pursuant to Indiana Trial Rule 52.  When a trial court enters findings of fact and conclusions of law *sua sponte*, those findings control only with respect to the

---

[1] Mother does not appeal the award of a reimbursement of half of this amount to Father.

issues they cover, and the general judgment standard applies to issues upon which no findings were entered. *Ahls v. Ahls*, 52 N.E.3d 797, 800 (Ind. Ct. App. 2016). Where the trial court entered findings, we consider whether the findings are supported by the evidence and whether the findings support the judgment. *Id*. We will only disregard a finding if it is clearly erroneous, meaning that there are no facts or inferences in the record to support it. *Id*. Matters falling under the general judgment standard are reviewed without reweighing evidence or considering witness credibility and may be affirmed upon any theory consistent with the evidence. *Baxendale v. Raich*, 878 N.E.2d 1252, 1257 (Ind. 2008).

## II. *Parenting Time*

Mother first challenges the trial court's award of parenting time to Father in excess of that provided for in the Guidelines for a child of C.D.'s age. Following a dissolution of marriage, the non-custodial parent normally is entitled to reasonable parenting time. *See* Ind. Code § 31-17-4-1(a). The trial court entered findings to support its parenting time determination, so we review that portion of its Order under the clearly erroneous standard. *See Ahls*, 52 N.E.3d at 800. In addition, we defer to the trial court's judgment regarding parenting time issues and will reverse only where the court has manifestly abused its discretion. *See Shady v. Shady*, 858 N.E.2d 128, 143 (Ind. Ct. App. 2006) (reviewing the portion of the trial court's dissolution order pertaining to parenting time), *trans. denied*. Our review of parenting time determinations entails neither reweighing the evidence nor judging witness credibility, and no

abuse of discretion will be found "if there is a rational basis in the record supporting its determination." *Id*. The best interests of the child are the foremost consideration in parenting time determinations. *Perkinson v. Perkinson*, 989 N.E.2d 758, 761 (Ind. 2013).

[13] The trial court did not afford Father any overnight parenting time as part of its Preliminary Orders. In its Final Order, the trial court ruled that Father's parenting time would be increased to include overnights with C.D. on Wednesdays and Thursdays and weekend overnights on Saturday and Sunday on alternating weekends. Therefore, Father would exercise parenting time chiefly through two overnights with C.D. one week and four overnights with her the next.[2] The trial court crafted its order in an effort to provide as much parenting time to Father as possible because it found that he had demonstrated good character and had the medical knowledge necessary to address C.D.'s needs. The trial court also found that its parenting time schedule minimized driving for Mother. The trial court's findings as to Father were supported by evidence that Father worked full-time as a rehabilitation facility manager, was a veteran and military medic who knew how to administer the nebulizer treatments and the thickened liquids C.D. required, had tested negative for controlled substances when Mother moved unsuccessfully to have him drug tested, and was an active participant in C.D.'s life and caregiving both before

---

[2] The trial court also ordered that holiday, special day, and extended parenting time would occur pursuant to the Guidelines appropriate for a child of three years of age. Mother does not address this portion of the trial court's parenting time order on appeal.

and after the dissolution proceedings began. In addition, although these findings were not extensive, we find that they provided a rational basis for the trial court's grant of overnight parenting time to Father. *See Shady*, 858 N.E.2d at 143.

[14] Mother does not directly challenge the evidence supporting these findings. Rather, she appears to argue that the trial court's findings do not support its parenting time order and that the trial court abused its discretion, first directing our attention to the portion of the Guidelines providing that very young children have a great need for continuous contact with their primary caregiver, who provides a sense of continuity and security. Parenting Time G. II(C)(1). Mother also directs us to the Guidelines that provide for one overnight per week for infants aged thirteen to eighteen months and for two overnights per week for children aged nineteen months through three years. Parenting Time G. II(C)(3)(B), (C). Mother argues that the trial court's parenting time order is greatly in excess of those provisions and is in direct contradiction to the Guideline's emphasis on continuous contact with the primary caregiver. Lastly, Mother contends that the trial court's parenting time order "does not serve [C.D.] well or recognize her best interests at her young age." (Appellant's Br. p. 15).

[15] In addressing Mother's arguments, we begin by noting that, although the Guidelines provide that it is beneficial for a very young child to have continuous contact with his primary caregiver, the Guidelines are also generally premised on the assumption that it is normally in a child's best interests to have

"frequent, meaningful and continuing contact with each parent" and that "both parents nurture their child in important ways, significant to the development and well being of the child." Parenting Time G. pmbl. The Guidelines further provide that a non-custodial parent who has had regular care responsibilities for the child "shall" have overnight parenting time and that overnight contact between a parent and a very young child provides opportunities for them to grow as a family. Parenting Time G. II(B), (C)(1) cmt. 3. The commentary to the Guidelines suggests that "[i]f workable, it is recommended that no more than two days go by without contact with the noncustodial parent." Parenting Time G. II(C)(1) cmt. 2. Mother does not contest that Father had regular care responsibilities for C.D. before and after separation. We conclude that the trial court's order balances and serves the goals of the Guidelines in that the majority of C.D.'s time will continue to be spent with Mother while allowing Father also to have significant and continuous contact with his minor daughter.

[16] We also observe that the trial court was not required to order parenting time consistent with the Guidelines for overnight parenting time for very young children. While there is a presumption that the Guidelines apply in all cases, a trial court may deviate from them. *See* Parenting Time G. pmbl. (C)(3). Even the Specific Parenting Time Provisions containing the age-specific overnight guidelines cited by Mother in support for her argument provide that they "are designed to *assist* parents and the court in the development of a parenting plan" and that "[t]hey represent the minimum recommended time a parent should have to maintain frequent, meaningful, and continuing contact with a child."

Parenting Time G. II(A) (emphasis added). What is more, because the trial court granted Father parenting time in excess of that provided in the Guidelines for the non-custodial parent, it was not required to give a written explanation for its order. Parenting Time G. pmbl. (C)(3). Nevertheless, as set forth above, the trial court provided an adequate explanation.

[17] Lastly, we reject Mother's contention that the trial court's order does not serve C.D. well and was not in her best interests. Mother supports her argument with citations to her own testimony that C.D. does not transition well from caregivers and takes time to adjust upon her return to Mother's home. The trial court heard this testimony but apparently did not give a great deal of weight to it, and we find that this argument is unavailing in that it requires us to reweigh evidence in contravention to our standard of review. *See Shady*, 858 N.E.2d at 143. Mother also states that Father now lives an hour away from Mother, but she does not explain how the trial court's order is not in C.D.'s best interest in light of that fact. We conclude that the trial court's parenting time determination was not clearly erroneous or an abuse of the trial court's discretion and that Mother has failed to convince us that the order was not in C.D.'s best interests. *See Ahls*, 52 N.E.3d at 800; *Shady*, 858 N.E.2d at 143; *Perkinson*, 989 N.E.2d at 761.

### III. *Property Division*

[18] Mother also argues that the trial court abused its discretion when it divided the proceeds from the sale of the marital residence. The trial court did not enter specific findings in support of this portion of the Final Order. Therefore, we

review this claim under the standard of review applicable to general judgments. *Ahls*, 52 N.E.3d at 800.

[19] There is a statutory presumption that an equal division of a marital estate is just and reasonable. *See* I.C. § 31-15-7-5. However, this presumption may be rebutted with evidence regarding the contribution of each spouse to the acquisition of the property and the extent to which the property was acquired by each spouse before marriage. *See* I.C. § 31-15-7-5(1), (2)(A). The division of a marital estate is left to the sound discretion of the trial court. *Helm v. Helm*, 873 N.E.2d 83, 89 (Ind. Ct. App. 2007). "The presumption that a dissolution court correctly followed the law and made all the proper considerations in crafting its property distribution is one of the strongest presumptions applicable to our consideration on appeal." *Id*.

[20] In the Final Order, the trial court divided the marital home sale proceeds and awarded Father the amount he had invested from the sale of the premarital home into the marital residence. The parties agree that, other than the disputed division of the proceeds of the sale of the marital residence, the trial court equally divided the marital assets and debts. Mother's first challenge to the division of the proceeds of the sale of the marital residence is that the trial court did not state its reasons for the unequal division. However, although the trial court did not enter specific, formal findings to support this portion of its Order, its ruling that the "[t]otal amount from the sale of [Father's] premarital home" was to be set over to Father made it clear that it was doing so because Father solely made this contribution to the marital residence and that the contribution

came from assets that he owned prior to the marriage. Both of these considerations are valid statutory factors a trial court may consider to support the unequal division of a marital estate. *See* I.C. § 31-15-7-5(1), (2)(A). Therefore, Mother's argument that the "*Order* is entirely silent as to why [Father] was entitled to an unequal share of the marital estate" is inaccurate, and, therefore, unpersuasive. (Appellant's Br. p. 19).

[21] Mother also challenges the substance of the division of the marital residence sale proceeds. However, Mother's argument consists of bald assertions that "[w]hile Indiana law allows the presumption of an equal division to be rebutted, [Father] failed to rebut the presumption" and "the unequal division of the marital estate is not just and reasonable." (Appellant's Br. pp. 16, 19). Father requested this unequal division of the marital residence sale proceeds and supported that request with testimony at the final hearing that he alone purchased the premarital home, Mother lived there with him but did not pay the mortgage or other bills, and he used the proceeds of the sale of the premarital home to renovate the marital residence. Mother does not address this evidence or support her argument with legal authority that a trial court abuses its discretion in unequally dividing a marital estate under like circumstances. We conclude that Mother's argument is unpersuasive and that she has failed on appeal to rebut the strong presumption that the trial court correctly applied the law and made all appropriate considerations in crafting its property division order. *See Helm*, 873 N.E.2d at 89.

# CONCLUSION

[22] Based on the foregoing, we conclude that the trial court's parenting time order was not clearly erroneous or an abuse of its discretion and that Mother has failed to meet her burden on appeal to persuade us that the trial court abused its discretion when it unequally divided the marital residence sale proceeds.

[23] Affirmed.

[24] Vaidik, C. J. and Bradford, J. concur