## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 31 2016, 8:57 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Andrea L. Ciobanu
Alex Beeman
Ciobanu Law, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Denise F. Hayden
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kelly J. Hudson f/k/a Kelly J. Freidline, *Appellant-Respondent,* v. Ted Freidline, *Appellee-Petitioner.* | August 31, 2016 Court of Appeals Case No. 49A02-1508-DR-1289 Appeal from the Marion Superior Court The Honorable Kimberly D. Mattingly, Judge Pro Tempore Trial Court Cause No. 49D05-9805-DR-741 |

**Mathias, Judge.**

[1] Kelly J. Hudson ("Mother") appeals the order of the Marion Superior Court granting in part a petition filed by Hudson's ex-husband, Ted Freidline

("Father"), regarding child support, college expenses, and contempt of court.

On appeal, Mother presents five arguments, which we restate as:

I.    Whether the trial court magistrate had authority to issue the order under appeal;

II.   Whether the trial court erred in concluding that Father was not in arrears on his child support;

III.  Whether the trial court erred in holding Mother in contempt due to her failure to complete court-ordered mediation;

IV.   Whether the trial court erred in ordering Mother to pay certain uninsured medical expenses incurred by the parties' son; and

V.    Whether the trial court had authority to order the parties' son to attend therapy.

We affirm in part, reverse in part, and remand with instructions.

## Facts and Procedural History

Mother and Father were married and had a son, ("Son"), who was born on February 17, 1996. The parties divorced in 1998, and the trial court entered a dissolution decree incorporating the parties' settlement agreement. Pursuant to this agreement, the parties shared joint legal custody, but Mother had primary physical custody of Son. The agreement provided that Father was to pay $160 per week in child support. The agreement also provided that Mother was to pay "the first $580.00 annually in uninsured medical, dental, optical, and prescription drug expenses pursuant to the 6% rule and any of said expenses above $580.00 annually shall be paid 59% by Father and 41% by Mother." Appellant's App. p. 17. The agreement also stated that "[b]oth parents agree that they will encourage their son to attend college and that in the event he does

attend college or other higher education, the parties will contribute to said costs based upon the child's aptitude and the parents' ability to contribute at the time in consideration[.]" *Id.*

[4] Son turned eighteen years of age in February 2014. In March 2014, Son and his companions used a synthetic drug referred to "N-bomb."[1] Tr. p. 51. Son had a severe reaction and went into cardiac arrest. He was transported to the hospital, where he recovered. Tragically, however, another young man who had also taken the drug in the same house died. The police investigated this incident, and Father became concerned that Son could be criminally charged in connection with the death. Father therefore retained the services of a criminal defense attorney, which cost him approximately $8,000. Father also paid $5,000 in medical expenses related to Son's stay at the hospital and $1,000 for Son to undergo treatment for alcohol and drug abuse at Fairbanks.

[5] On May 27, 2014, Father filed a petition to establish post-secondary educational expenses and modify his child support. While these matters were pending, Son moved to Bloomington in August 2014 to attend Indiana University. On December 8, 2014, the trial court ordered both parties to attend mediation.

[6] Although both parties appeared with their counsel for the scheduled mediation, Mother was also accompanied by two other people, Jay Gagne and Paula

---

[1] *See* National Institute on Drug Abuse, "N-bomb," https://www.drugabuse.gov/emerging-trends/n-bomb.

Gagne, who were her employers and financial advisors.[2] Father objected to the presence of the third parties. Mother refused to continue without them, and the mediation was not completed. Father then filed a petition for a contempt citation, claiming that Mother was in contempt for not completing the court-ordered mediation.

[7] The trial court held hearings on the pending matters on February 25 and April 10, 2015, at which both parties appeared with counsel. The trial court issued an order on June 29, 2015, providing that, with regard to college expenses, Son was to pay for his books, supplies, and personal expenses. The court found that Mother earned 59% and Father 41% of the parties' combined weekly income. Therefore, the court ordered Mother to pay 59% and Father 41% of Son's tuition and room and board expenses for no more than eight semesters or four years. The court ordered that Son maintain a 2.0 grade point average and to attend counseling. With regard to child support, the trial court determined that, as of the date of Son's emancipation, Father did not have an arrearage in child support, nor had Father overpaid child support. Regarding Father's request to be reimbursed by Mother for Son's uninsured medical expenses, the court ordered Mother to pay for 59% of the medical expenses Father incurred as a result of Son's overdose, including his treatment at Fairbanks. The court also ordered Mother to provide medical insurance for Son, with the parties splitting

---

[2] The Gagnes own and operate Gagne Wealth Management, and Mother works there as an administrative assistant.

the uninsured expenses along the above-mentioned 59% – 41% split.[3] The trial court also found Mother in contempt for failing to participate in mediation. The trial court ordered Mother to pay $1,000 in attorney fees to Father's attorney as a sanction for her contempt. Lastly, the trial court determined that Mother was not required to reimburse Father for the $8,000 he had spent to retain a criminal defense attorney for Son, noting that Father did not consult with Mother before retaining this attorney.

[8] Unsatisfied with this result, Mother filed a motion to correct error on July 14, 2015. The trial court denied Mother's motion to correct error on August 6, 2015. On August 28, 2015, Mother filed her notice of appeal.

## Standard of Review

[9] Where, as here, the trial court enters specific findings and conclusions *sua sponte*, we review its findings and conclusions to determine whether the evidence supports the findings, and whether the findings support the judgment. *Helm v. Helm*, 873 N.E.2d 83, 87 (Ind. Ct. App. 2007). We will set aside the trial court's findings and conclusions only if they are clearly erroneous. *Id*. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake was made. *Id*. On appeal, we neither reweigh the evidence nor assess the credibility of the witnesses, and we consider only the

---

[3] The trial court denied Father's request that Mother repay him for the medical insurance premiums he had paid despite the fact that the original dissolution decree required Mother to pay for medical insurance for Son inasmuch as the parties had mutually agreed that Father would pay for medical insurance premiums in lieu of an increase in his child support obligation.

evidence most favorable to the trial court's judgment. *Id.* Further, findings made *sua sponte* control only the issues they cover, and a general judgment will control as to the issues upon which there are no findings. *Id.* A general judgment entered may be affirmed if it can be sustained on any legal theory supported by the evidence. *Id.*

Moreover, our appellate courts give considerable deference to the findings of the trial court in family law matters. *Stone v. Stone*, 991 N.E.2d 992, 999 (Ind. Ct. App. 2013), *aff'd on reh'g*, 4 N.E.3d 666 (citing *MacLafferty v. MacLafferty*, 829 N.E.2d 938, 940 (Ind. 2005)). Whether we review a case for clear error or an abuse of discretion, this appellate deference is, first and foremost, a reflection that the trial court is in the best position to judge the facts, ascertain family dynamics, and judge witness credibility and the like. *Id.*

## I. Authority of Trial Court Magistrate

Mother first argues that the trial court's order was signed only by the trial court magistrate, not the trial court judge, and that the trial court's order is therefore a nullity.[4] *See Floyd v. State*, 650 N.E.2d 28, 30 (Ind. 1994) ("[w]hen a court

---

[4] Father argues that Mother waived this argument by failing to present it in her motion to correct error. Our supreme court amended Trial Rule 59 by removing a motion to correct error as a condition precedent to an appeal except in two specific instances: (1) where a party seeks to address newly discovered evidence, and (2) where a party claims that a jury verdict is excessive or inadequate. *Walker v. Pillion*, 748 N.E.2d 422, 425-26 (Ind. Ct. App. 2001); *see also Bowlers Country Club*, 846 N.E.2d at 735 (citing Ind. Trial Rule 59(A)(1), (2)). All other issues and grounds for appeal appropriately preserved during trial may be initially addressed in the appellate brief. T.R. 59(A). Therefore, generally speaking, the failure to raise an issue in a motion to correct error no longer waives that issue for purposes of appeal. *See Bowlers Country Club*, 846 N.E.2d at 736. However, it has also been held that any objection to the authority of a judicial officer must be raised at the first instance the irregularity occurs, or at least within such time as the tribunal is able to remedy the defect. *City of Indianapolis v. Hicks*, 932 N.E.2d 227, 231 (Ind. Ct. App. 2010). We need not decide if any conflict

official who is not a duly elected or appointed judge of the court purports to make a final order or judgment, that decision is a nullity.").[5] The powers of a magistrate are set forth in Indiana Code section 33-23-5-8, which provides in relevant part that, "[e]xcept as provided under sections 5(14) and 9(b) of this chapter [dealing with criminal cases], a magistrate . . . may not enter a final appealable order unless sitting as a judge pro tempore or a special judge."

[12] Mother argues that nothing in the record shows that the trial court magistrate was sitting as a judge pro tempore or as a special judge and that the trial court's order is therefore not a final appealable order. Of course, if the trial court's order was not a final appealable order, then Mother's appeal would have to be dismissed. *See In re D.W.*, 52 N.E.3d 839, 842 (Ind. Ct. App. 2016) (dismissing appeal where order being appealed was not a final appealable order), *trans. denied*.

[13] Here, the trial court magistrate signed the order being appealed as "Judge Pro Tempore." Appellant's App. p. 52. However, "a judge's status is determined by an examination of the record, not the judge's self-description." *Ringham v. State*, 768 N.E.2d 893, 898 (Ind. 2002). The record as initially presented to us was

exists between these cases, because Mother does not prevail even when we consider her argument on the merits.

[5] At first glance, it seems odd that Mother, as the appellant, would request that we dismiss the very appeal she brought. However, Mother's position is that the trial court's order was a nullity, and contends that if we dismiss the appeal based on the trial court magistrate's alleged lack of authority, the parties would thereby be restored to the *status quo ante*. Any relief Mother might gain from this hypothetical might be short lived, as Father could remedy the issue by requesting that the trial court judge approve and sign the magistrate's order. Moreover, as explained *infra*, we conclude that the trial court magistrate, acting as judge pro tempore, did have the authority to enter the order Mother is appealing.

unclear as to whether and when the trial court magistrate was appointed as judge pro tempore. Accordingly, on July 11, 2016, this court issued an order requiring Father to supplement the record with proof that the magistrate was properly appointed as judge pro tempore. Father did so on July 21, 2016, by filing with this court an order appointing the magistrate as judge pro tempore on June 29, 2015, the date of the order currently being appealed.

[14] Therefore, the record before us, as supplemented by Father, adequately demonstrates that the trial court magistrate was acting as judge pro tempore on the date that she entered the order currently being appealed. Mother argues that the supplemental materials filed by Father still do not adequately show that the trial court magistrate was acting as judge pro tempore on the date of the two hearings in this matter. However, magistrates are authorized to conduct hearings even if they are not sitting as a judge pro tempore. *See* Ind. Code § 33-23-5-5(11) ("A magistrate may do any of the following . . . [c]onduct an evidentiary hearing or trial."). More importantly, the trial court magistrate entered the order on appeal when she was sitting as judge pro tempore. Had she been sitting only as a magistrate, this would not be a final appealable order. *See* I.C. § 33-23-5-8(2). Because the trial court magistrate was sitting as judge pro tempore at the time she entered the order, we consider it a final appealable order, and we decline to dismiss Mother's appeal.[6]

---

[6] We further note that the record before us, even as supplemented by Father, is still not clear as to the trial court magistrate's status when she issued the order denying Mother's motion to correct error. The order itself

## II. Child Support Arrearage

[15] Mother also claims that the trial court erred in determining that Father was not in arrears on his child support. Father's child support obligation was $160 per week pursuant to the original settlement agreement approved by the trial court on December 31, 1998. Accordingly, Mother contends that Father was required to pay $160 per week starting on January 1, 1999, the day after the settlement agreement was accepted, until August 19, 2014, the date she claims that Son left for college.[7] Mother testified that Son left for college between August 14 and August 19, 2014. Father testified that Son left for college the second week of August. Therefore, we will use the date of August 14, 2014 for our calculations, as this date falls within both parties' testimonies.

[16] Father submitted evidence that he paid $128,000 in child support over this period. This number represents $160 per week over 800 weeks. Mother claims, however, that Father was required to pay child support from January 1, 1999 until August 19, 2014, which is 816 weeks. Thus, according to Mother's

---

is signed as "magistrate," and the CCS entry for that order provides, "Order Denying Motion to Correct Error (Judicial Officer: Mattingly, Kimberly Dean - M). Appellant's App. pp. 68, 8. Generally speaking, once appointed, a judge pro tempore has jurisdiction to hear the case to completion even if the term of the appointment has expired. *Floyd v. State*, 650 N.E.2d 28, 33–34 (Ind. 1994). Here, even if the order denying the motion to correct error was not properly entered by a judge, this does not require us to dismiss Mother's appeal. Mother's motion to correct error was filed on July 14, 2015, and the trial court never set a hearing on the motion. Accordingly, even if the magistrate's order denying the motion to correct error was a nullity, the motion was deemed denied by operation of Trial Rule 53.3(A) forty-five days after it was filed, i.e. August 28, 2015, which is the same day that Mother filed her appeal. Thus, Mother's appeal is timely.

[7] Father's petition to establish post-secondary educational expenses and modify child support requested that the child support obligation abate as of the date Son began to attend college.

calculations, Father should have paid $130,560 ($160 multiplied by 816) in child support over this period, leaving an arrearage of $2,560.

[17] Our calculations show 815 weeks[8] between January 1, 1999 (when Father's child support obligation began) and August 14, 2014 (when the parties agree that Son left for college).[9] Father's child support obligation of $160 per week multiplied by 815 weeks totals $130,400. Father's own evidence shows that he paid $128,000 in child support, thus leaving a deficit of $2,400. We therefore reverse the trial court with regard to the finding that Father was not in arrears on his child support obligation.

[18] We reject Father's claim that he should be given credit for the other expenses he incurred on behalf of Son, such as paying for Son's dermatologist and paying for his attorney. In Indiana, a parent obligated to pay child support will not generally be allowed credit for payments that do not conform with the child support order. *Decker v. Decker*, 829 N.E.2d 77, 79-80 (Ind. Ct. App. 2005) (citing *Kaplon v. Harris*, 567 N.E.2d 1130, 1133 (Ind. 1991)). Our courts have recognized narrow exceptions to this rule for: (1) payments made directly to the mother, (2) payments made via an alternative method agreed to by the parties and substantially complying with the existing decree, (3) payments covered

---

[8] More precisely, 5,704 days are between January 1, 1999 and August 14, 2014. This is equal to 814.86 weeks.

[9] Father testified that Son left for college in the second week of August. Mother testified that Son left for college sometime between August 14 and August 19.

when the non-custodial parent takes custody of the children with the other parent's consent, and (4) payments made toward the funeral expenses of a child. *Id*. None of Father's claimed expenses fall within any of these exceptions.

[19] Mother also claims that the trial court erred by not ordering Father to pay child support in the amount of $30 per week after Son left for college until the date he was emancipated by reaching the age of nineteen on February 17, 2015. Father himself proposed that his child support obligation be modified to $30 per week during this time period, and Mother agreed. *See* Tr. pp. 108, 166; Appellant's App. pp. 42-43. Yet, the trial court did not mention this amount in its child support calculations. Twenty-six weeks are between August 14, 2014 and February 17, 2015, which when multiplied by $30 per week equals $780. On remand, the trial court should include this amount in Father's arrearage.

## III. Contempt

[20] Mother next argues that the trial court's finding that she was in contempt for failing to complete the court-ordered mediation was clearly erroneous. Our supreme court has explained the law governing contempt findings as follows:

> Generally speaking, contempt of court involves disobedience of a court which undermines the court's authority, justice, and dignity. Contempt may be either direct or indirect. It is direct when it involves acts which are committed in the presence of the court or in such close proximity to it so as to disrupt its proceedings while in session. And indirect contempt involves those acts committed outside the presence of the court which nevertheless tend [] to interrupt, obstruct, embarrass or prevent the due administration of justice. The General Assembly has,

properly, codified the elements and procedural requirements for both direct and indirect contempt. *See* Ind. Code chapter 34-47-2 (direct contempt), chapter 34-47-3 (indirect contempt); *LaGrange v. State*, 238 Ind. 689, 692-93, 153 N.E.2d 593, 595 (1958) (judicial power to punish for contempt is inherent and "essential to the existence and functioning of our judicial system," and legislature "has no power to take away or materially impair it" but "may regulate the exercise of the inherent contempt power by prescribing rules of practice and procedure").

Additionally, though a contempt proceeding is technically neither civil nor criminal, those labels are applied to certain categories of contemptuous misconduct based largely on the purpose of the remedy. Criminal contempt actions are punitive and are carried out in response to an act directed against the dignity and authority of the court which obstructs the administration of justice and which tends to bring the court into disrepute or disrespect. Civil contempt, however, is misconduct arising from a violation of a court order which results in a proceeding for the benefit of the aggrieved party, and the resulting penalties are either coercive or remedial. Civil contempt is not an offense primarily against the dignity of the court, but rather is for the benefit of the party who has been injured or damaged by the failure of another to conform to a court order issued for the private benefit of the aggrieved party.

*In re A.S.*, 9 N.E.3d 129, 131-32 (Ind. 2014) (some citations and internal quotations omitted). Whether a party is in contempt is a matter left to the discretion of the trial court, and we will reverse the trial court's finding of contempt only if no evidence or inferences drawn therefrom support it. *In re Paternity of M.P.M.W.*, 908 N.E.2d 1205, 1209 (Ind. Ct. App. 2009). Here, it is apparent that the trial court found Mother to be in indirect civil contempt,

inasmuch as the conduct for which she was found to be in contempt did not occur in the presence of the court and the sanction imposed was monetary and for the benefit of Father.

[21] The parties both agree that the trial court ordered them to participate in mediation. In fact, the mediation was required by local rule. *See* Marion Circuit and Superior Courts Family Rule 502(H) ("Mandatory Mediation" rule providing generally that "[p]arties must submit all contested final hearing issues requiring two hours or more of court time and all non-contempt post-decree child related issues to mediation prior to presenting the issues to the court for hearing[.]"). Pursuant to Indiana Alternative Dispute Resolution Rule 2.7(B)(1), "The parties and their attorneys shall be present at all mediation sessions involving domestic relations proceedings *unless otherwise agreed. At the discretion of the mediator, non-parties to the dispute may also be present*." (emphasis added).

[22] Here, the parties attended the scheduled mediation session as ordered. Mother, however, brought along her employers and advisors, the Gagnes. Father objected to the Gagnes continued presence. As found by the trial court, "[r]ather than send her guests away, Mother and her guests left the mediation and it did not occur." Appellant's App. p. 51.

[23] Mother now claims that the evidence is insufficient to support the trial court's finding that it was her fault that the mediation did not occur. Instead, she claims that it was Father who refused to proceed with the Gagnes present. This may be true, but Father was not required to consent to the Gagnes presence. *See*

A.D.R. Rule 2.7(B)(1). More importantly, A.D.R. Rule 2.7(B)(1) gives the mediator discretion to allow non-parties to be present at the mediation.

[24] Mother refers to evidence in the record that supports her position the mediator never asked the Gagnes to leave and that it was Father's refusal to allow the Gagnes to be present that caused the mediation to fail. However, this is a request that we review evidence not favorable to the trial court's decision and reweigh the evidence, which we will not do. *See Helm*, 873 N.E.2d at 87. Father testified that the mediation did not happen because the Gagnes would not leave. Tr. p. 77. From this, the trial court could reasonably infer that the mediator did not want the Gagnes to be present but that they declined to leave, thus prematurely ending the mediation before it even began. Given the trial court's discretion in such matters, we cannot say that the trial court abused its discretion in determining that Mother was in contempt for failing to complete the mediation.

## IV.  Uninsured Medical Expenses

[25] Mother also contends that the trial court erred by requiring her to pay for 59% of the uninsured medical expenses Father incurred as a result of Son's overdose, including his treatment at Fairbanks. Mother specifically refers to the $5,000 in hospital expenses Father incurred as a result of Son's treatment following his overdose, plus the additional $1,000 Father spent to have Son treated for drug and alcohol abuse at Fairbanks. The trial court ordered Mother to pay $3,540 (59% of $6,000) to Father to reimburse him for her share of these expenses.

[26] Mother claims that this is improper because these medical expenses were incurred in March 2014, prior to Father's May 27, 2014, filing of his petition to establish post-secondary educational expenses and modify child support. Under the original settlement agreement, Mother was responsible for the first $580 of Son's uninsured medical expenses and 41% of expenses above this amount. Therefore, Mother argues that she could be held responsible for only $2,802.20 of Son's uninsured medical expenses.[10] Mother contends that to require her to pay for 59% of these expenses would effectively be a retroactive modification of the original agreement, which is impermissible. *See Taylor v. Taylor*, 42 N.E.3d 981, 986 (Ind. Ct. App. 2015) (noting that a trial court has discretion to make modification of child support relate back to the date the petition to modify was filed or any date thereafter, but that retroactive modification that relates back to a date earlier than that of the petition to modify is improper), *trans. denied*.

[27] In support of her argument, Mother relies upon *Sinnott v. Sinnott*, 603 N.E.2d 890 (Ind. Ct. App. 1992), which held that retroactive modification of the support order regarding the allocation of uninsured medical expenses was improper because it related back to a date prior to the filing of the petition to modify. Mother claims that the trial court's actions here were similarly improper. We agree.

---

[10] This amount represents what Mother was responsible for under the original settlement agreement: the first $580 of Son's uninsured medical expenses plus 41% of the remaining uninsured medical expenses ($6,000 less $580 is $5,420, and 41% of $5,420 is $2,222.20, which when added to $580 results in a sum of $2,802.20).

The original 1998 settlement agreement, which had been approved by the trial court, was still in effect at the time that Father incurred the medical expenses relating to Son's stay at the hospital and his treatment at Fairbanks. Father did not file his petition to modify until after these expenses had been incurred. Accordingly, the trial court did not have the discretion to reallocate the proportion of these medical expenses that had been incurred before Father filed his petition to modify. We therefore reverse this portion of the trial court's order and remand with instructions that Mother be required to repay Father for $2,802.20 of Son's uninsured medical expenses.

## V. Authority to Order Son to Attend Therapy

Lastly, Mother claims that the trial court erred in requiring Son to attend therapy with a counsellor as a condition of Mother and Father contributing to his college expenses. Mother claims that the trial court had no authority over Son because it has been held that a child is not a party to the dissolution action. *L.D.H. v. K.A.H.*, 665 N.E.2d 43, 48 (Ind. Ct. App. 1996), *abrogated in part on other grounds by Russell v. Russell*, 682 N.E.2d 513 (Ind. 1997). We disagree. Although the child might not technically be a party to the dissolution, the trial court has obvious authority over children involved in a dissolution action. Indeed, it is the trial court who determines who has custody over the child and where the child will reside.

Mother acknowledges that Indiana Child Support Guideline 8(b) provides:

> The court should require that a student maintain a certain
> minimum level of academic performance to remain eligible for

parental assistance and should include such a provision in its order. The court should also consider requiring the student or the custodial parent to provide the noncustodial parent with a copy of the child's high school transcript and each semester or trimester post-secondary education grade report.

Mother claims that no similar provision exists regarding other conditions, such as counselling, that a trial court may impose.

[31]     However, we do not read the guideline as a unique grant to the trial court of limited and narrow authority regarding the conditions it may impose on the child of parties whom the trial court has ordered to contribute to the child's post-secondary educational expenses. Such limited authority would be inconsistent with the well-established, broad discretion of the trial court to shape the best remedy for children and their divorcing parents. Instead, we view 8(b) as an explanation of one of the ways in which the trial court may exercise its broad discretion in such matters, *see Stone*, 991 N.E.2d at 999, to impose limits and restrictions on a child whose parents have been ordered to contribute to the child's college expenses.

[32]     We find support for our holding in *Frazier v. Frazier*, 737 N.E.2d 1220, 1226 (Ind. Ct. App. 2000), in which the court held that the trial court abused its discretion by entering a post-secondary educational support order that contained no limits on the studies the child was entitled to pursue at the expense of his parents. The *Frazier* court reversed this unfettered support order with instructions that the trial court impose reasonable limitations on the child's educational choices. *Id*. We see no meaningful difference between the

restrictions ordered to be imposed in *Frazier* and the restrictions imposed by the trial court here. In fact, given the trial court's broad discretion in such matters, we think it entirely appropriate for the trial court to place reasonable restrictions on the parents' obligation to contribute to Son's college expenses, including that Son attend therapy with a counsellor. The trial court was appropriately concerned, given Son's past use and of illicit drugs, that Son would need such counselling to maintain his focus on his post-secondary education.

## Conclusion

[33] The trial court magistrate, sitting as judge pro tempore, had authority to enter the order being appealed, and we therefore decline to dismiss Mother's appeal. However, the trial court erred in concluding that Father was not in arrears on his child support obligation. Similarly, the trial court erred in ordering Mother to pay for 59% of Son's uninsured medical expenses because these expenses were incurred prior to Father's petition to modify. The trial court did not abuse its discretion in finding Mother in contempt of court for failing to complete the court-ordered mediation, nor did the court abuse its discretion in requiring Son to undergo therapy as a condition to his parents being required to pay for a portion of his college expenses.

[34] Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

Vaidik, C.J., and Barnes, J., concur.