ATTORNEY FOR APPELLANT
Robert M. Hamlett
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Thomas W. Vander Luitgaren
Matthew S. Schoettmer
Greenwood, Indiana

_____

# In the
# Indiana Supreme Court

**FILED**

Nov 22 2013, 12:10 pm

*Kevin S. Smith*

**CLERK**

of the supreme court,
court of appeals and
tax court

_____

No. 41S01-1306-TR-426

HAROLD O. FULP, JR.

*Appellant (Plaintiff below),*

v.

NANCY A. GILLILAND,

*Appellee (Defendant below).*

_____

Appeal from the Johnson Superior Court, No. 41D01-1011-TR-299
The Honorable Kevin M. Barton

_____

On Petition to Transfer from the Indiana Court of Appeals, No. 41A01-1111-TR-530

**November 22, 2013**

**Rush, Justice.**

Revocable trusts are popular substitutes for wills, intended to provide non-probate distribution of people's estates after their deaths, allowing them to retain control and use of their assets during their lifetimes. Here, Ruth Fulp placed her family farm in a revocable trust, reserving the right to revoke or amend the trust and to use its assets—with any remaining trust assets going to her three children upon her death. A few years later, she decided to sell the farm to her son Harold Jr. for a low price, to pay for her retirement-home care and keep the farm in the family. Ruth's daughter, Nancy Gilliland, argued that a bargain sale would breach Ruth's fiduciary duty to her children and deprive Nancy of "her share" of the trust.

We granted transfer to address an issue of first impression in Indiana: while a revocable trust is revocable, whom does the trustee serve? Of course, Ruth as trustee owed a duty to herself

as the trust's settlor and primary beneficiary. But the trial court found Ruth also owed that same fiduciary duty to her children as remainder beneficiaries. We conclude, though, that neither the terms of Ruth's trust nor the Indiana Trust Code require her to serve two masters—her duty as trustee was only to herself. Holding that trustees also owe a duty to remainder beneficiaries would create conflicting rights and duties for trustees and essentially render revocable trusts irrevocable. Ruth was free to sell her farm as trustee for whatever price she desired, without breaching a duty to her children.

## Facts

Soon after Ruth and Harold Fulp Sr. married, they moved to the family farm, where they raised their three children—Harold Jr., Nancy, and Terry. Harold Sr. farmed the land; Junior later joined him, then took over after Senior's death. A few years later, Ruth placed the farm into the Ruth E. Fulp Revocable Trust. As the Trust's primary beneficiary, Ruth could use its assets; as trustee, she could sell them; and as settlor, she could "alter, amend or revoke" the Trust "in any respect." In addition, the Trust required the trustee—unless another term of the trust provided otherwise—to "administer the trust solely in the interest of the beneficiaries," "treat multiple beneficiaries impartially," and "preserve the trust property." Upon Ruth's death, the trust would become irrevocable, and the successor trustee would distribute any remaining assets to the children.

As Ruth got older, she moved to the Indiana Masonic Home and decided to sell the farm to pay for her living expenses there. But she wanted to keep the farm in the family, so she approached Harold Jr., who was interested in buying it. He offered her a discounted price per acre—the same price Nancy's daughter had previously paid Ruth for another portion of the farm. Ruth agreed and said "what I did for one I can do for the other." But Harold Jr. cautioned her that the farm was worth more than the $450,252 he was offering. Indeed, an appraisal later showed it was worth more than $1 million.

Harold Jr.'s lender, Farm Credit, drew up the purchase agreement, and Ruth signed it. When Nancy found out, she objected because she "wanted her share." Before the sale closed, Ruth resigned as trustee. Nancy then became successor trustee and refused to proceed with the sale, and Harold Jr. sought specific performance of the purchase agreement. He also argued that Nancy tortiously interfered with the agreement.

2

After a bench trial, the trial court found that Ruth was competent to sell the farm, the price paid for the farm was adequate, and Harold Jr. exerted no undue influence. Still, the court denied specific performance because it found that Ruth breached her fiduciary duty to the children by selling the farm at a low price, and Harold Jr. breached his fiduciary duty as a beneficiary by participating in the sale.

Harold Jr. appealed. The Court of Appeals agreed with the trial court that if Ruth had sold the farm as *trustee*, she would have breached a fiduciary duty to her children. Fulp v. Gilliland, 972 N.E.2d 955, 964 (Ind. Ct. App. 2012), trans. granted, 988 N.E.2d 797. But it also recognized that if Ruth had such a duty, her conflicting rights and duties as trustee would essentially render the Trust irrevocable. To avoid that untenable result, the court instead concluded that Ruth sold the farm as *settlor*, so that the purchase agreement "in effect" amended the Trust. The Court of Appeals also concluded that Nancy had not tortiously interfered with the contract.

Nancy sought transfer, asking us to decide whether the trustee of a revocable trust owes a duty to the settlor alone or also to the remainder beneficiaries. We granted transfer to address that issue, and we conclude that while a revocable trust is revocable, the trustee only owes a duty to the settlor. Therefore, Ruth was free to sell the farm as trustee, as the purchase agreement reflected, without breaching any fiduciary duty. And since Ruth owed her children no duty as trustee, she had no need to sell the farm as settlor, as the Court of Appeals concluded—nor would the facts in this case support any intent to amend the Trust. Finally, we expressly adopt the Court of Appeals' conclusion that Nancy did not tortiously interfere with a contractual relationship. Ind. Appellate Rule 58(A).

**Standard of Review**

This case requires us to determine Ruth's duties under the terms of the Trust and the Indiana Trust Code. The interpretation of trusts and statutes is a question of law, which we review *de novo*. Univ. of S. Ind. Found. v. Baker, 843 N.E.2d 528, 531 (Ind. 2006); Kaser v. Barker, 811 N.E.2d 930, 932 (Ind. Ct. App. 2004), trans. denied.

## Revocable Trusts

Ruth held the farm in a revocable trust. Revocable trusts have become popular estate planning tools and substitutes for wills because they allow settlors to avoid probate and guardianship, to have greater privacy, and to manage their assets. John J. Barnosky, The Incredible Revocable Living Trust, 10 J. Suffolk Acad. L. 1, 1–15 (1995). Like other trusts, a revocable trust "is a fiduciary relationship between a person who, as trustee, holds title to property and another person for whom, as beneficiary, the title is held." See Ind. Code § 30-4-1-1(a) (2004). A settlor creates a revocable trust by executing the trust agreement, at which time the trustee takes legal title to the property, and the beneficiary takes equitable title. Breeze v. Breeze, 428 N.E.2d 286, 287 (Ind. Ct. App. 1981); see I.C. § 30-4-1-1(a). But unlike other trusts, settlors of revocable trusts continue using the trust property during their lives and retain the power to revoke or amend the trust at any time. Kesling v. Kesling, 967 N.E.2d 66, 80, 86 (Ind. Ct. App. 2012), trans. denied. And unlike a will, upon the settlor's death, the "trust property is not in the decedent-settlor's estate." In re Walz, 423 N.E.2d 729, 732 (Ind. Ct. App. 1981). When Ruth agreed to sell the farm, her Trust was fully revocable, and she was its settlor, trustee, and primary beneficiary.

## Interpreting Ruth's Trust

We must interpret the terms of the Trust to determine the duties it imposed upon Ruth as trustee, and to determine whether the sale of the farm breached any of those duties. Our primary purpose "in construing a trust instrument is to ascertain and give effect to the settlor's intention." Univ. of S. Ind. Found., 843 N.E.2d at 532. We look at the trust as a whole and cannot take "individual clauses out of context." Walz, 423 N.E.2d at 733 (quoting Hauck v. Second Nat. Bank of Richmond, 153 Ind. App. 245, 259-60, 286 N.E.2d 852, 861 (1972)). If the "trust is capable of clear and unambiguous construction," we "must give effect to the trust's clear meaning." Univ. of S. Ind. Found., 843 N.E.2d at 532. Finally, after interpreting the terms of the Trust, we must ensure that its application does not violate the Trust Code. See I.C. § 30-4-1-3 (2004).

## Ruth's Fiduciary Duties

Nancy argues that Ruth as trustee breached a fiduciary duty to the remainder beneficiaries by selling the farm for below market value. A trustee breaches his or her fiduciary duties by violating any duty owed to the settlor or beneficiary. I.C. § 30-4-1-2(4) (2004). Ruth's Trust provided that she, as trustee, owed a fiduciary duty to herself as settlor and primary beneficiary. We disagree with Nancy's argument that the Trust imposed on Ruth an additional duty to her own children.

## I. Trust Law Generally.

Whether the trustee of a revocable trust owes a duty to remainder or contingent beneficiaries while the trust is revocable is an issue of first impression in Indiana, but other states have concluded that trustees owe no such duty while a trust is revocable. We find Justice Guzman's concurrence in Moon v. Lesikar, 230 S.W.3d 800, 806 (Tex. App. 2007), persuasive. There, a contingent beneficiary of a revocable trust argued that her rights were violated when the settlor/ trustee of a revocable trust sold trust property for well below fair market value. Id. at 802, 809. Justice Guzman concluded that if the settlor/trustee of a revocable trust owed the contingent beneficiaries a duty, the settlor/trustee's rights and duties would conflict because "the settlor, in his capacity as trustee, would have a duty to prevent *himself*, in his capacity as settlor, from revoking the trust." Id. at 809. Because this illogical conclusion would render the trust "no longer . . . freely revocable," Justice Guzman concluded that the trustee's duty was to the settlor not the contingent beneficiaries, while the trust was still revocable. Id. at 809-10. And the Florida Court of Appeals reached a similar conclusion in Brundage v. Bank of Am., 996 So.2d 877, 882 (Fl. Dist. Ct. App. 2008): "during the settlor/beneficiary's lifetime, a trustee owes a fiduciary duty to the settlor/beneficiary and not the remainder beneficiaries, who not only have no vested interest but whose contingent interest may be divested by the settlor prior to her death."

Finally, the Uniform Trust Code takes a similar position: "While a trust is revocable . . . , rights of the beneficiaries are subject to the control of, and the duties of the trustee are owed exclusively to, the settlor." Unif. Trust Code § 603(a) (amended 2010). Courts in states that have enacted the Uniform Trust Code have easily concluded that trustees exclusively owe a duty to settlors—and indeed, we can find no jurisdiction that holds otherwise. E.g., In re Stephen M. Gunther Revocable Living Trust, 350 S.W.3d 44, 47 (Mo. Ct. App. 2011) (finding "[t]he trustee

owed no duty to the beneficiaries prior to the settlor's death"); Ex Parte Synovus Trust Co., 41 So.3d 70, 74 (Ala. 2009) (finding the trustee owed a duty only to the settlors, so the beneficiaries' "causes of action for breach of fiduciary duty do not seek redress for *legally protected rights*").

## II. Terms of Ruth's Trust.

With those general trust law principles in mind, we turn to Ruth's duties under her Trust. Our primary purpose in interpreting the Trust is to implement her intent as settlor, Univ. of S. Ind. Found., 843 N.E.2d at 532, and two provisions of Ruth's Trust show she intended to owe a duty only to herself. First, Article I provides that Ruth could revoke the Trust for any reason at any time, which shows that she intended to control the farm and treat it as her own property. See Marshall Cnty. Tax Awareness Comm. v. Quivey, 780 N.E.2d 380, 383, 385 (Ind. 2002) (finding that settlor/trustee/primary beneficiary of property was still its "beneficial owner," even though he had previously transferred title to the trustee); Kesling, 967 N.E.2d at 83 (finding settlor of trust could vote shares of stock held by the trust because he was the stock's beneficial and record owner); see also 26 U.S.C. § 677(a) (2006) (taxing income from revocable trust property as if it was the settlor's property because the settlor has control of the property). Second, Article II provides that the Trust is for Ruth's "use and benefit"—including the right to use all Trust assets. The children's interest in the Trust is purely secondary and arises only if Ruth chooses not to divest them and if she chooses not to use all of the assets. So as trustee, Ruth's fiduciary duty was to herself, as settlor and primary beneficiary. Stated differently, Ruth was her own master.

But Nancy argues that Ruth's duty as trustee also extends to her remainder beneficiary children. To find that Ruth owed such a duty, however, would bring her rights and duties into conflict—she would have to serve two masters. As discussed above, such conflicting duties would essentially make her Trust irrevocable, because complying as trustee with her own wishes to revoke the Trust would breach her purported duty to the remainder beneficiaries by placing her own interests above theirs. Moon, 230 S.W.3d at 809. In sum, Nancy's argument fails because it would defeat, rather than implement, the settlor's intent. Univ. of S. Ind. Found., 843 N.E.2d at 532.

Nancy nevertheless argues that the terms of Article V of the Trust compel the counter-intuitive conclusion that Ruth's duty as trustee also extended to her children. That provision, titled Trustee's Duties, states: "*Unless the terms of the trust provide otherwise*, the Trustee also has a

duty: 1. to administer the trust solely in the interest of the beneficiaries; 2. to treat multiple beneficiaries impartially; . . . [and] 4. to preserve the trust property" (emphasis added). Here, though, Article V would conflict with other rights and duties given to Ruth while the Trust is revocable and she is still primary beneficiary. For instance, Ruth cannot have a duty to administer the Trust solely in the interest of the beneficiaries, when Article I lets her remove any beneficiary anytime. And she cannot have any duty to preserve the Trust's assets, when Article II gives her the right to consume them. By contrast, no such conflict exists in applying Article V to a successor trustee once the Trust has become irrevocable and Ruth is no longer primary beneficiary—at that time, the successor trustee can readily administer the trust for the beneficiaries, treat them impartially, and preserve the Trust property. But until then, Article V by its terms must yield to Ruth's own powers as settlor, trustee, and primary beneficiary.

Accordingly, Ruth as trustee owed a duty only to herself. As primary beneficiary, she was entitled to use the Trust assets for her own benefit—and here, selling the farm benefitted her by providing her with money for her care while keeping the farm in the family. The sale did not breach any duty to Ruth's remainder beneficiaries because she owed them no duty. Since Ruth complied with the terms of the Trust, we must next determine whether its terms comply with the Indiana Trust Code.

### III. Indiana's Adoption of Uniform Trust Code Section 603.

In 2013, the Legislature amended the Trust Code to declare the same rule we announce today—that while a trust is revocable, the trustee's duty is only to the settlor: "While a trust is revocable and the settlor has the capacity to revoke the trust: . . . (2) the duties of the trustee are owed exclusively to . . . the settlor." I.C. § 30-4-3-1.3(a) (Supp. 2013), Act of Apr. 29, 2013, P.L. 99-2013, § 9, 2013 Ind. Acts 745. That provision is materially identical to Uniform Trust Code section 603, discussed above—and though this amendment took effect after Ruth executed the Trust, Trust Code amendments apply retroactively unless they would "adversely affect a right given to any beneficiary . . . [or] relieve any person from any duty or liability imposed by the terms of the trust or under prior law." I.C. § 30-4-1-4(b) (Supp. 2013). As detailed above, this statute captures Ruth's intent, and does not adversely affect the rights of any of the beneficiary children because their rights were subject to Ruth's right as settlor to revoke the Trust. Similarly,

the law does not relieve any person of a duty because while the Trust was revocable, Ruth owed a duty only to herself. Therefore, under both the terms of the Trust and under Indiana law, Ruth owed no duty to her remainder beneficiary children.

### The Court of Appeals Decision and Amending a Revocable Trust

The Court of Appeals also concluded that Ruth could sell the farm for below fair market value, but for a different reason. It recognized that without some power to freely sell the farm, Ruth's revocable Trust would essentially become irrevocable. But the Court of Appeals believed that "viewing Ruth as trustee" would cause the sale to breach a fiduciary duty to the remainder beneficiaries—so that instead, Ruth must have intended to sell the farm as settlor, "in effect partially amending the Trust." Since Ruth's Trust is silent about how to amend it, the Trust Code requires any purported amendment to be in writing and "manifest[] clear and convincing evidence of the settlor's intent" to amend the trust. I.C. § 30-4-3-1.5(c)(2)(B) (Supp. 2013). The Court of Appeals concluded that the signed purchase agreement between Ruth and Harold Jr. was a sufficient written manifestation of intent to amend.

We respectfully disagree with our colleagues' conclusion for three reasons. First, as discussed above, Ruth as trustee owed no duty to her children while her trust was revocable, so no amendment was necessary for her to carry out her intent to sell the farm. Second, she held title to the farm as trustee and signed the purchase agreement in that express capacity. And third, the agreement did not purport to change the Trust, because nothing about the sale would change the Trust's terms, but only convert its primary asset from illiquid real estate to liquid cash. Because of these facts, we find that the purchase agreement did not manifest clear and convincing evidence that Ruth intended to amend the Trust.

### Is Harold Jr. Entitled to Specific Performance?

Harold Jr. sought specific performance of the purchase agreement, which the trial court denied because it found that Ruth and Harold Jr. breached their respective fiduciary duties. We review a trial court's decision to grant or deny specific performance for an abuse of discretion, Kesler v. Marshall, 792 N.E.2d 893, 896 (Ind. Ct. App. 2003), trans. denied—that is, for whether the decision is "clearly against the logic and effect of the facts and circumstances before the court

or if the court has misinterpreted the law." State v. Willits, 773 N.E.2d 808, 811 (Ind. 2002). Because real estate is unique, courts routinely grant specific performance of purchase agreements. Kesler, 792 N.E.2d at 896. Here, the trial court misinterpreted the Trust and the law by determining that Ruth had a duty to her children that she breached and that Harold Jr. aided in that breach. Therefore, its denial of specific performance was an abuse of discretion.

## Nancy's Equitable Defenses

Finally, Nancy argues that Harold Jr. should not be granted specific performance because the agreement is unfair, harsh, and inequitable, based on the disparity between the farm's value and the sale price. But the trial court specifically found that the sale price was adequate, considering that Ruth offered Harold Jr. the same discounted price that she had previously offered Nancy's daughter and wanted to keep the farm in the family. And we will not set aside the trial court's findings or judgment unless they are clearly erroneous. Marion Cnty. Auditor v. Sawmill Creek, LLC, 964 N.E.2d 213, 216 (Ind. 2012) (quoting Ind. Trial Rule 52(A)). Nancy has failed to show that the trial court erred. Id.

## Conclusion

We conclude that under the terms of the Trust and the Trust Code Ruth owed her children no fiduciary duties and was free to sell her farm at less than fair market value; and that Harold Jr. is therefore entitled to specific performance. We also conclude that Ruth did not effectively amend the Trust by selling the farm. The judgment of the trial court is therefore reversed and remanded, with instructions to grant specific performance of the purchase agreement.

Dickson, C.J., and Rucker, David, and Massa, JJ., concur.

9