FILED

Sep 20 2023, 8:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Nadine E. McSpadden
Sarah C. Jenkins
Taft Stettinius & Hollister LLP
Indianapolis, Indiana

Amanda R. Blystone
Broyles Kight & Ricafort, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Katherine A. Rich
Jessie Cobb-Dennard
The Northside Law Firm
Westfield, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Juliet C. Roberts,

*Appellant-Petitioner*,

v.

John A. Roberts, Jr.,

*Appellee-Respondent*.

September 20, 2023

Court of Appeals Case No.
23A-DN-588

Appeal from the Marion Superior
Court

The Honorable Jennifer J. Hubartt,
Magistrate

Trial Court Cause No.
49D14-2201-DN-182

**Opinion by Judge Brown**
Judges Crone and Felix concur.

**Brown, Judge.**

[1] Juliet C. Roberts ("Wife") appeals the trial court's denial of her motion for summary judgment requesting a finding regarding the marital assets subject to division in this dissolution proceeding. We affirm.

*Facts and Procedural History*

[2] Wife and John A. Roberts, Jr., ("Husband") were married in 1962. Harriet Cain, who was Wife's mother, created a trust (the "Trust") in June 1967 and amended and restated the trust instrument on December 21, 1981. The Trust instrument, under "ITEM VI," titled "Trusts for Daughters," provides:

> A. The Trustee shall pay to said daughter all of the net income in convenient installments not less frequently than quarterly.
>
> B. The Trustee shall distribute to said daughter, or to such recipient as she may designate, so much or all of the trust principal as she may, from time to time, direct by an instrument or instruments in writing delivered to the Trustee; provided, however, that such right to withdrawal shall not apply to undivided interests in assets, such as the Settlor's farm, the distribution of which, in the opinion of the Trustee and the Adviser, would substantially diminish the fair market value of the remaining undivided interests held by the Trustee.

Appellant's Appendix Volume II at 35-36. Under "ITEM XII," titled "Miscellaneous Provisions Applicable To all Trusts Hereunder," it provides:

> E. The interest of each beneficiary in the income or principal of a trust under this instrument shall be free from the control or interference of any creditor of a beneficiary or of any spouse of a married beneficiary and shall not be subject to attachment or susceptible of anticipation or alienation.

*Id.* at 43-44.  Harriet died in November 1985 and was survived by her three children, Wife, John Frenzel III ("Frenzel"), and Suzanne Baldwin ("Suzanne").  Husband was appointed as the trustee of the Trust in February 2013.  Suzanne died in March 2019 and was survived by her four children, including Michael Baldwin ("Michael").

[3]     In October 2019, Michael filed a petition for relief under cause number 49D08-1910-TR-42618 ("Cause No. 618") alleging that Husband had breached his duties as trustee and failed to follow terms of the Trust.  The petition stated that, on June 14, 2019, Husband had sent an email to Michael's attorney stating: "The trust consists of Farms and oil wells on those farms.  (Royalty interests).  The Trust also owns two limited liability Real Estate Partnerships.  The Farms are the Kinney Farm (850.24 acres), the Stum Farm (492.50 acres), and the Cartwright Farm (75.0 acres)."  *Id.* at 68.  The petition also stated that, on June 19, 2019, Husband sent an email to Michael's attorney stating:

> Yes, I stated that [Michael] will receive all distributable income and assets on a timely basis.  The key word is "distributable."  None of the assets in the [Trust] can be distributed[.]  You will note in ITEM VI of the trust, paragraph B, that such right of withdrawal shall not apply to undivided interests in assets such as settlor's farm, the distribution of which, in the opinion of the Trustee and the adviser, would substantially diminish the fair market value of the remaining undivided interests held by the trustee.  It is impossible legally to distribute any assets as the these [sic] assets are only 50% owned by the [Trust].  There is another Trust that owns the other 50% undivided interest in the assets.  The Baldwins have the right to participate in 44.444% of 50% of undivided interests in the assets.  Therefore there is nothing to discuss as these assets cannot be

distributed. The Baldwins will receive all income . . . and if any assets are sold they will receive their shares. . . .

*Id*. at 70. A settlement agreement was entered in Cause No. 618 in May 2020.

[4] On January 7, 2022, Wife filed a petition for dissolution of marriage in the Marion Superior Court under cause number 49D14-2201-DN-182 ("Cause No. 182"). On January 11, 2022, the Marion Superior Court issued an order under cause number 49D08-2201-TR-870 relating to the Trust which removed Husband and appointed Borkowski Legal Services LLC d/b/a/ Arrow Fiduciary Services as trustee. In April 2022, Wife filed a motion for summary judgment under Cause No. 182 requesting a finding that her interest in the Trust is not a marital asset. In her memorandum, Wife argued the Trust met the requirements of a spendthrift trust. She further argued that she "has no present pecuniary interest divisible in the dissolution action because, pursuant to the terms of the [Trust], she does not have a right to withdraw any principal from the [Trust] and, therefore, there are no assets divisible in the dissolution action related to the [Trust]." *Id*. at 24.

[5] Husband filed a response arguing that "[b]oth parties to this action are elderly and the trust distributions have served as the lion's share of their monthly income for some time," Wife "receives monthly distributions from the Trust," and "[t]hose distributions are occurring currently, are not remote, and are subject to division as a marital asset." *Id*. at 72. He argued "[t]hose funds are also subject to a claim from [him] for spousal

maintenance," he "will be claiming that the increased distributions from the Trust are due in part to his actions on behalf of the Trust," and he will be "arguing for an unequal division of the assets in his favor given that the economic circumstances of [Wife] are greater than his economic circumstances." *Id*. at 72-73.

On November 23, 2022, the court held a hearing. Wife called Rebecca Geyer, a board-certified trust and estate specialist in Indiana, who testified the Trust instrument contains a spendthrift provision. Wife's counsel referred to a document with a date ending October 31, 2022, and Geyer indicated the document was an accounting showing the inventory or assets held by the Trust. When asked "are all of the assets owned by the trust, what would be considered undivided interests and assets," she testified:

> From my review, the answer to that is yes with, I don't know what uh specifically is in the fifth third account,[1] but it looks like that's just a clearing account that holds the income like farm income from cash rent and things that is received as well as the oil royalty interest before they're distributed out to the beneficiaries. But everything else contains undivided interests in real estate holdings and those are owned [in] part by this trust, and it's my understanding they're owned in part by another trust as well.

---

[1] Under a heading for beginning inventory, the accounting includes a line for a Fifth Third account with a value of $8.43. The accounting also indicates there were proceeds from the sale of a building of $11,516.24 and there was an ending inventory of $2,000 attributable to income and $1,988.50 attributable to principal.

Transcript Volume II at 13-14. When asked about the sources of the Trust's income, Geyer testified "there may be a little bit of bank interest" which was "pretty minimal" and the primary income sources included rents associated with the farms and royalties associated with approximately twenty wells. *Id*. at 18-19. She indicated that, to her knowledge, there was no written agreement with the tenant who farmed the property. She stated that a well can stop producing, which happens frequently, leading to the termination of the associated royalty. When asked if it was possible to determine the income from the mineral rights in the future, she indicated she could look at tax returns to determine the royalties previously received but she did not have any idea how to anticipate the future royalties.

[7] On cross-examination, Geyer indicated the accounting for the period of July 18, 2022, through October 31, 2022, showed that Wife received a little over $130,000 during that period. She indicated the Trust instrument referred to the settlor's farm as an example of an undivided interest but did not specifically reference oil or mineral rights. She indicated Wife was receiving distributions from the Trust at least quarterly, and when asked "at least by reviewing the tax returns, it looks like that has increased over the last couple of years," she answered affirmatively. *Id*. at 29. When asked "we don't know as we sit here today, if the trustee would determine any distribution of assets to be quote, substantially diminishing the fair market value of the remaining assets," she answered "[c]orrect." *Id*. at 34.

Wife's counsel argued there was no dispute regarding the assets held by the Trust. She asserted that Wife's interest in the Trust is too remote to be divided in the dissolution and that Wife "doesn't have the ability to sell a portion of her interest" and "can't force the trust to sell any assets." *Id.* at 38. She argued the income from the farms and wells varied and was not guaranteed. She also argued that, while the court could consider Wife's future income in determining whether to deviate from an equal division and in considering a request by Husband for spousal maintenance, the court could not consider the future income to be a marital asset to be divided. Husband's counsel argued Wife has the ability to request distributions of the corpus of the trust and "[t]his court has no idea, if [Wife] were . . . to request a distribution of certain trust assets, what the value of those would be versus the other assets." *Id.* at 41. His counsel also argued a spendthrift trust was not created because Wife had the ability to request distributions.

On December 19, 2022, the trial court issued an order denying Wife's motion for summary judgment and providing:

> 4.    The [Trust] consists primarily of farms, oil wells on those farms, and limited liability real estate partnerships. The primary income distributed to the beneficiaries is a result of royalties from the oil wells.
>
> * * * * *
>
> 7.    Trial Rule 56 provides that Summary Judgement may be granted regarding one or all issues in a matter, provided there is no genuine issue of material fact. Here, [Husband] has raised a genuine issue of material fact regarding the meaning and effect

of the Trust language in Section VI. B. of the instrument. While the Court may determine, after final hearing and the consideration of facts, testimony, and evidence, that the [Trust] should not be considered a marital asset, the Court does not determine the same as a matter of law.

Appellant's Appendix Volume II at 13-14. Upon Wife's request, the trial court certified its interlocutory order for appeal and this Court accepted jurisdiction.

*Discussion*

[10] We review an order for summary judgment *de novo*, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). The moving party bears the initial burden of making a *prima facie* showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind. 2013). If the moving party succeeds, then the nonmoving party must come forward with evidence establishing the existence of a genuine issue of material fact. *Id.*

[11] Wife maintains that her interest in the Trust does not constitute marital property to be divided in the dissolution. She argues that "[a]ll the assets held by the Trust are indivisible," "the Trust owns only 50% of those assets," and she has "no current right to demand distribution of the Trust principal." Appellant's Brief at 13. She argues the spendthrift provision applies to her interest in the Trust income and principal. She contends her interest in the Trust is too remote to be included in the marital pot and that she has no right to demand a distribution of Trust assets. She also argues the Trust's future income is uncertain and does not constitute a marital asset.

[12] Husband argues there is a question as to whether the Trust is a spendthrift trust and that the Trust provisions "allow for distribution of assets should the Trustee and the Adviser not find the same would substantially diminish the fair market value of the remaining undivided interests held by the Trustee." Appellee's Brief at 8. He argues Wife's expert indicated that "the distributions [Wife] had been receiving had increased over the last couple of years" and "did not testify that the farmland or oil wells could not be distributed to [Wife] without substantially diminishing the fair market value of the remaining undivided interests held by the trustee." *Id*. at 9.

[13] To the extent we must interpret the Trust instrument, the interpretation of a trust is a question of law. *Fulp v. Gilliland*, 998 N.E.2d 204, 207 (Ind. 2013). The primary purpose in construing a trust instrument is to ascertain and give effect to the settlor's intention. *Id*. If the trust is capable of clear and unambiguous construction, we give effect to the trust's clear meaning. *Id*.

[14] Ind. Code § 31-15-7-4 governs the division of property in dissolution actions and requires that the trial court divide the property in a just and reasonable manner. The court shall presume that an equal division of marital property between the parties is just and reasonable, and the trial court may deviate from an equal division when that presumption is rebutted. Ind. Code § 31-15-7-5. It is well-established that all marital property goes into the marital pot for division, whether it was owned by either spouse before the marriage, acquired by either spouse after the marriage and before final separation of the parties, or acquired by their joint efforts. *Campbell v. Campbell*, 993 N.E.2d 205, 213 (Ind.

Ct. App. 2013). "Property" means "all the assets of either party or both parties" including "(1) a present right to withdraw pension or retirement benefits; (2) the right to receive pension or retirement benefits that are not forfeited upon termination of employment or that are vested . . . but that are payable after the dissolution of marriage; and (3) the right to receive disposable retired or retainer pay . . . acquired during the marriage that is or may be payable after the dissolution of marriage." Ind. Code § 31-9-2-98. The Indiana Supreme Court has held that "[t]he phrase 'all assets' is broadly inclusive and is not limited to the list of examples that follows it." *Bingley v. Bingley*, 935 N.E.2d 152, 155 (Ind. 2010). The "one pot" theory specifically prohibits the exclusion of any asset from the scope of the court's power to divide and award. *Kendrick v. Kendrick*, 44 N.E.3d 721, 728 (Ind. Ct. App. 2015), *trans. denied.* While the court may ultimately determine a particular asset should be awarded to one spouse, it must first include the asset in its consideration as to how the marital estate should be divided. *Id.*

[15] Further, this Court has observed that a right to receive future payments can be considered property. *Helm v. Helm*, 873 N.E.2d 83, 87-88 (Ind. Ct. App. 2007) (the right to certain retirement benefits, matured stock options, and structured settlement payments may constitute marital property). The common denominator is whether the interest in the future payment is vested. *Id*. at 88. "The word 'vest' generally means either vesting in possession or vesting in interest. Vesting in possession connotes an immediate existing right of present enjoyment, while vesting in interest implies a presently fixed right to future

enjoyment." *Id*. (citations omitted). *See also Vadas v. Vadas*, 762 N.E.2d 1234, 1235-1236 (Ind. 2002) (property with a vested interest at the time of dissolution may be divided as a marital asset). On the other hand, some property interests are considered too remote or speculative to constitute assets capable of division. *See Harrison v. Harrison*, 88 N.E.3d 232, 235-236 (Ind. Ct. App. 2017) (noting the wife's interests in certain trusts were subject to complete defeasance because she would take nothing if she predeceased her parents and would receive nothing during her lifetime unless a majority of the trustees elected to make a disbursement, and concluding the wife was not presently possessed of any pecuniary value which could have been before the court for disposition) (citing *Loeb v. Loeb*, 261 Ind. 193, 301 N.E.2d 349, 353 (1973) (holding the husband's interest in a trust was subject to complete defeasance because he would take nothing under the trust if he predeceased his mother and thus he was "not presently possessed of any pecuniary value which could have been before the court for disposition")), *trans. denied*.

[16] The record reveals that, pursuant to the terms of the Trust, Wife began receiving payments from the net income of the Trust during her marriage to Husband and is receiving payments from the Trust at least quarterly. The Trust instrument requires the trustee to pay Wife her share of "all of the net income in convenient installments not less frequently than quarterly." Appellant's Appendix Volume II at 35. The Trust holds a fifty percent interest in three farms containing more than 1,400 acres, approximately twenty active oil wells, and two limited liability real estate partnerships. Geyer testified the Trust's

primary sources of income include the rents associated with the farm property and the royalties associated with the oil wells. She further testified that the accounting for the period beginning July 18, 2022 and ending October 31, 2022, showed Wife received a little over $130,000 and that the payments to Wife had increased over the previous couple of years. Unlike in *Harrison* and *Loeb*, Wife's interest in the Trust is not subject to complete defeasance—indeed, she is receiving payments from the Trust. In light of the Trust's assets, sources of income, and ongoing mandatory payments, we cannot say that Wife's interest is too remote or speculative to be capable of division or that she does not have a presently fixed right to future enjoyment. Given the broad language in Indiana's statutes governing the division of marital property and our caselaw that all marital property goes into the marital pot for division, we cannot say the trial court erred in denying Wife's motion for summary judgment.

[17]   To the extent Wife asserts the Trust contained spendthrift provisions, "[a] spendthrift trust is one in which the beneficiary is unable to transfer, assign, or alienate his right to future payments of income or principal, and which provides the beneficiary's creditors are unable to subject the beneficiary's interest to the payment of their claim while in the hands of the trustee." *United States v. Grimm*, 865 F. Supp. 1303, 1311 (N.D. Ind. 1994) (citing *Brosamer v. Mark*, 540 N.E.2d 652 (Ind. Ct. App. 1989), *aff'd*, 561 N.E.2d 767 (Ind. 1990); Ind. Code § 30-4-3-2(a)). "There are three requirements for a trust to be a spendthrift trust. First, the settlor may not be a beneficiary of the trust. Second, the beneficiary must not have any present dominion or control over the plan corpus. Third, the

trust must contain an anti-alienation clause which prevents the beneficiary from voluntarily or involuntarily transferring his interest in the trust." *Id.* (citing *Matter of Jones*, 43 B.R. 1002 (N.D. Ind. 1984)). The Trust expressly provides the trustee "shall distribute . . . so much or all of the trust principal as [Wife] may, from time to time, direct." Appellant's Appendix Volume II at 36. The Trust also states this right does not apply "to undivided interests in assets . . . the distribution of which, in the opinion of the Trustee and the Adviser, would substantially diminish the fair market value of the remaining undivided interests held by the Trustee." *Id.* The designated evidence does not establish as a matter of law that the Trust does not hold any assets which may be distributed pursuant to these terms. We cannot say the trial court was required to grant Wife's motion for summary judgment on this basis.

[18] With that said, we express no opinion as to whether the trial court should ultimately determine that Wife's interest in the Trust should be awarded to her or the appropriate method of valuing or awarding a portion of Wife's interest in future distributions from the Trust. *See* 146 AM. JUR. PROOF OF FACTS 3D 197, *Proof of Equitable Distribution of Oil or Mineral Rights in Divorce* (2015) ("[W]here the interest is too speculative to obtain a definite valuation, the court may award a percentage interest in the mineral or oil rights in the equitable distribution of the marital estate. . . . Where a trust is involved, the interest may become more speculative because the trustee may not allow a distribution to the

beneficiary and thus this consideration must be taken into account when analyzing its valuation.") (footnotes omitted).[2]

[19] For the foregoing reasons, we affirm the trial court.

[20] Affirmed.

Crone, J., and Felix, J., concur.

---

[2] "For example, in [*Holte v. Holte*, 837 N.W.2d 894 (N.D. 2013)], [the] court held that a husband had a present property interest in a trust that generated income from mineral interests, such that proceeds from [the] trust were properly included in [the] marital estate when distributing property in divorce proceeding. [T]he husband had received income from the trust, and the trust was irrevocable. The husband's income from the trust that generated the income from the mineral interests was too speculative to value, and therefore, the wife was entitled to a percentage of the future income from the trust in a property division in a divorce proceeding where, although the husband had a fixed one-fourth interest in all royalties and other income from the trust, mineral production levels, mineral values, and other factors that were subject to fluctuation affected the income from the trust." 146 AM. JUR. PROOF OF FACTS 3D 197 (footnote omitted).