

IN THE

# Court of Appeals of Indiana

Dennis Robinson, et al.,

*Appellants-Respondents*

v.

Dana Nunley, et al.,

*Appellees-Petitioners*



FILED

Dec 02 2025, 8:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

---

December 2, 2025

Court of Appeals Case No.
25A-TR-189

Appeal from the Jasper Circuit Court

The Honorable John D. Potter, Judge

Trial Court Cause No.
37C01-2402-TR-230

---

**Opinion by Judge Mathias**
Judges Vaidik and Pyle concur.

**Mathias, Judge.**

[1] Dennis Robinson and Sandra Papszycki appeal the trial court's order interpreting an amendment to the Janet L. Robinson Revocable Living Trust Agreement. Dennis and Sandra raise two issues for our review, which we consolidate and restate as whether the trial court erred in its interpretation.

[2] We reverse.

## Facts and Procedural History

[3] Dennis and Sandra are the surviving children (and hereafter referred to as the "Children") of Janet L. Robinson. Janet had a third child, Trudie Riegle, who predeceased Janet. However, before her death, Trudie had three children of her own: Dana Nunley, Amber Riegle, and Andrew Feldhaus (the "Grandchildren").

[4] In 2000, Janet established the Janet L. Robinson Revocable Living Trust Agreement ("the Revocable Trust") as well as a Life Insurance Trust. At least one purpose of the Revocable Trust was to distribute Janet's assets upon her death. The purpose of the Life Insurance Trust, meanwhile, was to pay Janet's estate taxes. The Life Insurance Trust held a single asset, namely, a life insurance policy ("the policy") in which the Life Insurance Trust was the named beneficiary. The Children were the named beneficiaries of the Life Insurance Trust.

[5]     In August 2004, Janet executed the First Amendment to the Revocable Trust ("the First Amendment"). As relevant here, Section 2 of the First Amendment amended the Revocable Trust to state:

> After the death of the Grantor, and after complying with the provision of the preceding paragraph . . . , the Trustee shall determine whether the previous and separate [Life Insurance Trust] . . . is sufficient to pay all Federal and State estate taxes. In the event [the Life Insurance Trust] is not sufficient . . . , the Trustee shall pay the remaining balance in full from the residuary trust estate. In the event there is a surplus after Federal and State taxes are paid from the [Life Insurance Trust], the Trustee shall pay a separate payment from the residuary trust estate to the three [G]randchildren . . . such that the three [G]randchildren receive an equal one-third (1/3) payment to [sic] any surplus after taxes are paid received by [sic] my son, Dennis W. Robinson and my daughter, Sandra Papszycki, such that each group receives an equal one-third (1/3) share. After complying with the above-referenced provisions, the Trustee shall distribute the residuary trust estate . . . to my children as follows:
>
> > a) One-third (1/3) to my son, Dennis . . . .;
> >
> > b) One-third (1/3) to my daughter, Sandra . . . .;
> >
> > c) One-third (1/3) to my [G]randchildren . . . .

Ex. Vol. 3, pp. 14-15.

[6]     Thereafter, changes in state and federal law rendered the Life Insurance Trust unnecessary. Accordingly, in 2016, Janet petitioned the Pulaski Circuit Court to terminate the Life Insurance Trust. She and the Trustee, the Edward Jones

Trust Company, then entered into a stipulation to terminate the Life Insurance Trust and to have the Trustee assign any payments under the policy to the Children "in equal proportions." *Id.* at 24. The Pulaski Circuit Court accepted the parties' stipulation and terminated the Life Insurance Trust accordingly.

[7] Janet died in October 2023. The Children, as the assignees of the policy payment, each received $170,993.01 following Janet's death. The Children, who were co-trustees of the Revocable Trust, did not make any policy-related payment to the Grandchildren under the First Amendment.

[8] The Grandchildren petitioned the Jasper Circuit Court to determine the scope and effect of the First Amendment and whether they were entitled to a policy-related payment under that amendment prior to the final distribution of the residuary of the Revocable Trust. The trial court held an evidentiary hearing on the Grandchildren's petition, at which the parties submitted numerous exhibits along with the testimony of Janet's attorney. Following that hearing, the trial court, relying on extrinsic evidence, concluded that Janet's intent under the Revocable Trust was to have the Grandchildren share a $170,993.01 payment out of the residuary of the Revocable Trust prior to the final distribution of the residuary.[1]

---

[1] The evidence presented to the trial court also demonstrated that there were substantial assets in the residuary of the Revocable Trust. Whether a payment to the Grandchildren prior to the final distribution of the residuary was made or not, the Grandchildren will receive a distribution from the residuary.

[9] This appeal ensued.

## Discussion and Decision

[10] The Children appeal the trial court's interpretation of the First Amendment to the Revocable Trust. The interpretation of a trust is a question of law that we review de novo. *Fulp v. Gilliland*, 998 N.E.2d 204, 207 (Ind. 2013). Our primary purpose in interpreting a trust instrument is to ascertain and give effect to the settlor's intent. *Id.* (quotation marks omitted). We look to the trust as a whole and will not take any individual clauses out of context. *Id.* (quotation marks omitted). If a trust is capable of clear and unambiguous construction, we must give effect to the trust's clear meaning. *Id.* (quotation marks omitted).

[11] We initially note that the trial court relied on extrinsic evidence in discerning Janet's intent under the First Amendment to the Revocable Trust. On appeal, both the Children and the Grandchildren agree that the amendment is ambiguous. In particular, the Children assert that the amendment contains a "latent" ambiguity, that is, an ambiguity that reveals itself only after considering "extrinsic evidence" outside of a written instrument's four corners. *Univ. of S. Ind. Found. v. Baker*, 843 N.E.2d 528, 534 (Ind. 2006). The trial court, without explicitly saying so, appears to have relied on that same position.

[12] However, our Supreme Court has abandoned the distinction between patent and latent ambiguities. *Id.* at 535. The first question in interpreting a written instrument is "the four corners" rule, which holds that "extrinsic evidence is not admissible to add to, vary[,] or explain the terms of a written instrument if the

terms are susceptible of a clear and unambiguous construction." *Id.* at 532 (quotation marks omitted). "Accordingly, where a trust is capable of clear and unambiguous construction, under this doctrine, the court must give effect to the trust's clear meaning without resort to extrinsic evidence." *Id.* Only if a written instrument's four corners reveal an ambiguity—that is, a reading of the document susceptible to more than one reasonable interpretation—may extrinsic evidence then be considered to resolve the ambiguity. *Id.* at 532, 535.

[13] The threshold question in this appeal is, thus, whether the First Amendment to the Revocable Trust is ambiguous on its face. We conclude that it is not. Section 2 of the amendment plainly states that the Life Insurance Trust is to be used to pay any estate taxes. If there are funds from the Life Insurance Trust left over after any such payment, each of the Children is to receive half of those funds. And, in that event, the Grandchildren are to receive an equivalent payment, to be shared among them, from the residuary of the Revocable Trust. From there, the residuary of the Revocable Trust is to be distributed in one-third shares between the Children and the Grandchildren.

[14] That language speaks for itself and is the judiciary's best evidence of Janet's intent. As the Life Insurance Trust was canceled and no longer in existence at the time of Janet's death, the language regarding a surplus from the Life Insurance Trust became inoperative. However, inoperative language is not automatically ambiguous language. In other words, the plain language of the First Amendment to the Revocable Trust speaks only to the Life Insurance

Trust, which was a clear and unambiguous legal entity, and not to the assets held in that trust.[2]

[15] Similarly, the Grandchildren's reliance on Indiana Code section 30-4-2.1-11.1 (2025) is a nonstarter. That statute generally provides that, "if a trust refers to a writing of any kind, the referenced writing, whether subsequently amended or revoked, as it existed at the time of the execution of the trust, shall be given the same effect as if set forth at length in the trust . . . ."[3] But that language simply allows us to read the Revocable Trust and the Life Insurance Trust together; contrary to the Grandchildren's argument, it does not allow us to disregard "the subsequent . . . revocation of the Life Insurance Trust." Appellees' Br. at 21. Reading the two documents together, a pre-final-distribution payment to the Grandchildren out of the residuary of the Revocable Trust turns on the existence of a surplus from the Life Insurance Trust. As the Life Insurance Trust had no corpus at the time of Janet's death, Indiana Code section 30-4-2.1-11.1 does not countenance any such payment.

[16] Still, the Grandchildren argue that the above reading of the First Amendment to the Revocable Trust "leads to [an] unfair distribution" of the Revocable Trust's

---

[2] We also note that Janet, when she canceled the Life Insurance Trust in her lifetime, assigned the proceeds of the policy only to the Children personally, not to the Children as Trustees of the Revocable Trust and not to the Children and the Grandchildren. Nor did Janet, in her lifetime, amend the First Amendment following her cancelation of the Life Insurance Trust.

[3] Indiana Code section 30-4-2.1-11.1 was a new statute added to the Indiana Code effective July 1, 2015, some fifteen years after Janet established the Revocable Trust and the Life Insurance Trust. *See* Pub. L. 81-2015 § 19 (eff. July 1, 2015). We assume only for the sake of argument that the statute can be applied here.

assets. Appellees' Br. at 20. The implication of their argument, of course, is that Janet would have wanted the Grandchildren to receive a payment equivalent to the payment received by the Children from the policy to place the Grandchildren on equal footing with the Children prior to the final distribution of the residuary of the Revocable Trust. But, unfortunately, that implication is not clear; to the contrary, there was always a risk, at least under Section 2's plain language, that the residuary of the Revocable Trust would have insufficient assets to distribute to the Grandchildren for an equalization payment. Accordingly, the Grandchildren's argument fails.

As the trial court interpreted the First Amendment to the Revocable Trust to reflect an intention by Janet to do something other than what the language of the amendment states, we reverse the trial court's judgment for the Grandchildren.

Reversed.

Vaidik, J., and Pyle, J., concur.

ATTORNEYS FOR APPELLANTS

Matthew R. Land
Katherine A. Piscione
Waldron Tate Land LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Jackie L. Starbuck
Brian A. Karle

Ball Eggleston, PC
Lafayette, Indiana